**SIX (6) MEXICAN WORKERS, et al., Plaintiffs–Appellees,**

**v.**

**ARIZONA CITRUS GROWERS; Bodine Produce Company, Inc.; Robert Fletcher, d/b/a Fletcher Farms, Defendants–Appellants.**

**Nos. 89–15269, 89–15622.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 15, 1990.

Decided May 18, 1990.

---

Thomas N. Crowe, Crowe & Scott, Phoenix, Ariz., for defendants-appellants.

Garry B. Bryant, Tucson, Ariz., for plaintiffs-appellees.

Before SNEED, FARRIS and FERNANDEZ, Circuit Judges.

FARRIS, Circuit Judge:

This is an appeal from the district court's judgment finding Arizona Citrus Growers and two of its member growers liable for $1,846,500 in statutory damages for violation of the Farm Labor Contractor Registration Act. A prior appeal on several interlocutory rulings was consolidated with this appeal of the final judgment.

## FACTS

ACG is a nonprofit corporation operated as a cooperative for marketing the fruit produced by its 52 members. Appellants Bodine Produce Company and Fletcher Farms were the two largest members, controlling 60% of the total acreage harvested by ACG. A class action suit was filed on April 21, 1977 against these parties for failure to comply with requirements of FLCRA. The class consists of 1349 undocumented Mexican workers who were employed by ACG during the 1976–77 picking season. After a bench trial in 1984, the district court issued a finding that ACG was liable for the following violations of the Act: [1]

---

1. FLCRA, 7 U.S.C. § 2041 *et seq.*, was repealed and replaced by the Migrant and Seasonal Agricultural Worker Protection Act, Pub.L. 97–470, 96 Stat. 2583 (codified as 29 U.S.C. § 1801 *et seq.*). Section 2050a(b) of the prior act provided that the court may award "up to and including ... actual damages, or $500 for each violation, or other equitable relief."

1. Failure to register under the Act, 7 U.S.C. § 2043(a) ($0 award)
2. Failure to make written disclosure of terms of employment, 7 U.S.C. §§ 2045(b), (c) ($150 award per plaintiff)
3. Transportation violations, 7 U.S.C. §§ 2044(a)(4), (b)(12) ($250 award per plaintiff)
4. Record keeping violations, 7 U.S.C. § 2045(e) ($250 award per plaintiff)
5. Housing violations, 7 U.S.C. §§ 2044(a)(4), (b)(12) ($500 award per plaintiff)

Defendants Bodine and Fletcher were found liable as follows:

1. Engaging unregistered farm labor contractor, 7 U.S.C. § 2043(c) ($100 award per plaintiff)
2. Failure to obtain records, 7 U.S.C. § 2050c ($125 award per plaintiff)

After the trial, the district court issued orders concerning the identification of eligible class members. On March 31, 1989, the court issued a judgment for statutory damages against the defendants in the amount of $1,846,500 based on the identified class members. The court specified the method for distributing and verifying claims of members who could be located and ordered that any unclaimed funds be distributed through a *cy pres* award to the Inter–American Fund for indirect distribution in Mexico. *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 641 F.Supp. 259 (D.Ariz.1986). The court also awarded attorneys fees in the amount of 25 percent of the damages, recoverable from the plaintiff's award under the common fund doctrine.

ACG argues that the number of unlocated class members makes the class unmanageable, and that the cy pres doctrine may not be used to rectify this problem. ACG also appeals the magnitude of the district court's award as an abuse of discretion. Finally, ACG claims that the district court's award of attorney's fees was an abuse of discretion.

## STANDARD OF REVIEW

■ We review for an abuse of discretion a district court's certification of a class action, *Fentron Industries v. National Shopmen Pension Fund*, 674 F.2d 1300, 1305 (9th Cir.1982), the award of statutory damages, *see Alvarez v. Longboy*, 697 F.2d 1333, 1339–40 (9th Cir.1983), and the award of attorneys' fees. *Quesada v. Thomason*, 850 F.2d 537, 538 (9th Cir.1988).

## DISCUSSION

### I. CLASS MANAGEABILITY AND FLUID RECOVERY

ACG argues that the inability to locate most of the plaintiffs makes this case unmanageable as a class action. The difficulty surrounds the distribution of damages for the class members not located. ACG further contends that a "cy pres" or "fluid recovery" system may not be used to resolve the problem of distributing unclaimed funds.

#### A. *Class Manageability*

■ Among other requirements, a class action filed under Fed.R.Civ.P. 23(b)(3) must be "superior to other available methods" of adjudication in light of any "difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3). This "manageability" requirement includes consideration of the potential difficulties in notifying class members of the suit, calculation of individual damages, and distribution of damages. 3B *Moore's Federal Practice*, § 23.45[4.–4] (1987). ACG does not argue that notification was inadequate,[2] but contends that the

---

**2.** Rule 23 requires the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2). Initial class notification was achieved by mailing notice to those persons for which accurate addresses existed, publication and radio announcements in relevant U.S. and Mexi-

can newspapers, and posting. The district court adopted this method for notice of damages distribution as well. Other courts have found this method of notice to satisfy Rule 23 and due process in migrant worker cases. *Eg., Montelongo v. Meese*, 803 F.2d 1341, 1351 (5th Cir. 1986), *cert. denied*, 481 U.S. 1048, 107 S.Ct. 2179, 95 L.Ed.2d 835 (1987).

district court improperly used "fluid recovery" to avoid the "unmanageable" difficulties associated with individual proof and distribution of damages.

When a class action involves a large number of class members but only a small individual recovery, the cost of separately proving and distributing each class member's damages may so outweigh the potential recovery that the class action becomes unfeasible. Fluid recovery or "cy pres" distribution avoids these difficulties by permitting aggregate calculation of damages, the use of summary claim procedures, and distribution of unclaimed funds to indirectly benefit the entire class. *See Developments in the Law—Class Actions,* 89 Harv.L.Rev. 1318, 1517 (1976). Federal courts have frequently approved this remedy in the settlement of class actions where the proof of individual claims would be burdensome or distribution of damages costly. *In re Agent Orange Product Liability Litigation,* 818 F.2d 179, 184–85 (2d Cir.1987); *2 Newberg on Class Actions,* § 11.20 (2d Ed.1985). *Cf. Bebchick v. Public Utilities Commission,* 318 F.2d 187 (D.C.Cir.) (fluid recovery ordered in non-class action), *cert. denied,* 373 U.S. 913, 83 S.Ct. 1304, 10 L.Ed.2d 414 (1963). Moreover, numerous state courts have utilized cy pres or fluid recovery procedures to ensure that wrongdoers do not "retain ill gotten gains" simply because of the administrative difficulties traditionally associated with small per individual damages. *E.g., State v. Levi Strauss & Co.,* 41 Cal.3d 460, 224 Cal.Rptr. 605, 612, 715 P.2d 564, 571 (1986) (en banc); *see Newberg on Class Actions* at § 10.25.

Nevertheless, several federal courts have rejected fluid recovery as a "solution of the manageability problems of class actions." *Eisen v. Carlisle & Jacquelin,* 479 F.2d 1005, 1018 (2d Cir.1973), *vacated on other grounds,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *In re Hotel Telephone Charges,* 500 F.2d 86, 89–90 (9th Cir.1974); *Windham v. American Brands, Inc.,* 565 F.2d 59, 72 (4th Cir.1977), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978). *But see Simer v. Rios,* 661 F.2d 655 (7th Cir.1981) (rejecting *Eisen* and accepting fluid recovery on ad hoc basis).

In *Eisen,* suit was brought on behalf of approximately six million traders in odd lot stock alleging antitrust and securities violations. The court rejected the plaintiff's attempt to use fluid recovery where it avoided constitutionally required notice to each class member, dispensed with individual calculation of damages, and distributed the damages to future traders who were not necessarily members of the class. *See* 479 F.2d at 1017–18.

In *In re Hotel* we relied on *Eisen* in rejecting a fluid recovery argument. *In re Hotel* involved a class action under the Sherman Antitrust Act brought by a class consisting of several million individuals. The plaintiffs sought to use fluid recovery to avoid the difficulty of proving each class members' specific injury. Relying on *Eisen,* we rejected the attempt and stated that "allowing gross damages by treating unsubstantiated claims of class members collectively significantly alters substantive rights under the antitrust statutes." 500 F.2d at 90. We held that neither Rule 23 nor the antitrust laws permitted dispensing with individual proof of damages. *Id.* at 90, 92. *Cf. Windham v. American Brands, Inc.,* 565 F.2d at 72 ("Nor ... can the difficulties inherent in proving individual damages be avoided by the use of a form of 'fluid recovery.' ").

### 1) Aggregate Proof of Damages

The rejection of fluid recovery as it permits the aggregation of damages has caused some confusion and has received considerable criticism. *See Simer v. Rios,* 661 F.2d 655, 676 (7th Cir.1981) (adopting use of fluid recovery on ad hoc basis); *In re Federal Skywalk Cases,* 680 F.2d 1175, 1190 (8th Cir.1982) (Heaney, J., dissenting) (permissibility of aggregation depends on policy of underlying cause of action); *2 Newberg on Class Actions* at § 10.05. We need not address this controversy, however, because this case does not raise the concerns addressed by our decision in *In re Hotel,* or the decisions in *Eisen* and *Windham.* The district court did not use fluid recovery to avoid individual proof of damages, but adopted a cy pres procedure only

for the limited purpose of distributing unclaimed damages.

■ The plaintiff class sought statutory not actual damages. Statutory damages under FLCRA, unlike damages under the antitrust laws addressed in *In re Hotel,* are not dependent on proof of actual injury. *Alvarez v. Longboy,* 697 F.2d 1333, 1338 (9th Cir.1982). Congress intended these damages to promote enforcement of FLCRA and deter future violations. *See* S.Rep. No. 1295, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 6441. Therefore, the district court was not obligated to require individual proof of injury from each class member. *Montelongo v. Meese,* 803 F.2d at 1351 (FLCRA damages obviated need for individual proof); *see Haywood v. Barnes,* 109 F.R.D. 568, 583–84 (E.D.N.C.1986) (holding that an "across the board" class award of liquidated damages under FLCRA's successor provision was not an attempt to use "fluid recovery"). The concerns in *Eisen* and *In re Hotel* about the impermissible circumvention of individual proof requirements are not at issue where the underlying statute permits awards without a showing of actual damage.[3] *See Windham v. American Brands, Inc.,* 565 F.2d 59, 68 (4th Cir.1977) (where damages can be assessed mechanically, individualized claims for damages are no barrier to class certification). The district court's use of cy pres involved only the "distribution of damages" aspect of class action manageability.

2) Size of Potential Unclaimed Funds

■ ACG also contends that the class action was unmanageable because a substantial number of class members would never be located for distribution of the damage award. It is unclear how many class members will be located by the detailed notification procedure ordered by the district court. To the extent that the procedure may yield a substantial distribution of the funds, the manageability issue is not yet ripe.

■ In a majority of class actions at least some unclaimed damages or unlocated class members remain. *See* 2 *Newberg on Class Actions* § 10.14 (2d ed. 1985). The existence of a large unclaimed damage fund, while relevant to the manageability determination, does not necessarily make a class action "unmanageable." Class actions have been found manageable even where there exists the prospect of substantial unclaimed funds. *Perry v. Beneficial Finance Co. of New York,* 81 F.R.D. 490, 497 (W.D.N.Y.1979) (class is manageable even though up to 75% of members are not readily identifiable). Settlements of large class action suits have been approved even where less than five percent of the class files claims. *See* 2 *Newberg on Class Actions* at Appendix 8–2, §§ 8.44–45. Where the goals of the underlying statute are strictly compensatory, a class action resulting in substantial unclaimed funds will not further that goal. But where the statutory objectives include enforcement, deterrence or disgorgement, the class action may be the "superior" and only viable method to achieve those objectives, even despite the prospect of unclaimed funds. *See* 7A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1780 at 584 (1986) (consideration of policies of underlying statutes relevant to determining superiority of class action). Given the strong deterrence function of FLCRA's statutory damages provision, the district court properly found that this case was suitable for class action treatment.

Further, the potential for numerous unlocated class members stems largely from ACG's own failure to record and retain the addresses of its workers as required by

---

**3.** Of course, there still must be a showing that each person awarded damages was a member of the class. In the present case, the award of individual damages was dependent upon proof that the claimant was qualified as a member of the class and was affected by the particular violation. ACG's records were used to determine which members of the class were employed by the defendant growers, and who were transported or housed by the defendants. Where ACG's records were absent or inaccurate, specific employees were rebuttably presumed to qualify for the relevant statutory damages. ACG does not dispute that class member eligibility may be proven by this procedure.

FLCRA. Having intentionally violated statutory recording requirements, the defendants may not attempt to "avoid a class suit merely because their own actions have made the class more difficult to identify [or locate]." *Appleton Electric Co. v. Advance–United Expressways*, 494 F.2d 126, 135–39 (7th Cir.1974) (defendants' failure to keep records necessary to refund overpayments does not make class unmanageable). Irrespective of the method used for distributing the unclaimed funds, the district court did not abuse its discretion in maintaining the suit as a class action.

## B. *Distribution of Unclaimed Damages*

We next review the district court's adoption of a cy pres procedure for distributing the unclaimed funds. The court's order states that all unclaimed funds over $50,000 are to be given to the Inter–American Foundation for distribution in Mexico. The IAF apparently operates human assistance projects in areas where many of the plaintiffs are believed to reside. The funds have not been earmarked for any specific projects, and the court established no procedure for ensuring the proper distribution of the donated funds.

ACG challenges this distribution plan as directly contravening our rejection of fluid recovery. *See In re Hotel Telephone Charges*, 500 F.2d 86, 89–90 (9th Cir.1974); *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 235 (9th Cir.1974), *cert. denied* 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975). These cases rejected fluid recovery because it circumvented individual proof of damages required by the antitrust laws. We have found no Ninth Circuit precedent rejecting the use of cy pres or fluid distribution solely as a method of allocating unclaimed damages.

■ Most class actions result in some unclaimed funds. Having properly found that certification of the class action was appropriate, the district court was required to formulate a procedure for distributing unclaimed funds. The court's alternatives

included: 1) cy pres or fluid distribution, 2) escheat to the government, and 3) reversion to defendants.[4] 2 *Newberg on Class Actions* § 10.17 at 373–74. Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds. *Van Gemert v. Boeing Co.*, 739 F.2d 730, 737 (2d Cir.1984). The district court's choice among distribution options should be guided by the objectives of the underlying statute and the interests of the silent class members. *Cf. State v. Levi Strauss & Co.*, 41 Cal.3d 460, 224 Cal.Rptr. 605, 612, 715 P.2d 564, 571 (1986) (four-part test for choosing distribution option).

### 1) Cy pres distribution

■ The use of cy pres or fluid recovery to distribute unclaimed funds may be considered only after a valid judgment for damages has been rendered against the defendant. Unlike in *Eisen* and *In re Hotel*, where fluid recovery would eliminate statutorily required individual proof of damages, cy pres distribution of unclaimed funds does not subject defendants to greater liability or alter their substantive rights. Where the only question is how to distribute the damages, the interests affected are not the defendant's but rather those of the silent class members.

In *Nelson v. Greater Gadsden Housing Authority*, 802 F.2d 405, 409 (11th Cir. 1986), the Eleventh Circuit expressly approved the use of fluid recovery to distribute unclaimed class action funds. The court stated that the objection to fluid recovery derives from its use in aggregating damages or circumventing class action manageability requirements. The court found no obstacle to fluid distribution where those issues were not present. *Id.* We agree. We hold that the district court properly considered cy pres distribution for the limited purpose of distributing the unclaimed funds.

---

**4.** A fourth option is the pro rata distribution of the funds to located class members. *See Van Gemert*, 739 F.2d at 736 (rejecting pro rata as a form of fluid recovery). We express no view as to the propriety of this distribution method.

### 2) Reversion to federal government

A second option available to the district court was to permit the funds to "escheat" to the government pursuant to 28 U.S.C. §§ 2041, 2042 [5] (unclaimed money deposited with court reverts to government after five years). We have distributed funds in this manner when it served the deterrence and enforcement goals of the substantive federal statute. *Hodgson v. YB Quezada*, 498 F.2d 5, 6 (9th Cir.1974) (reversion of unclaimed settlement funds to Treasury authorized by enforcement goals of the FSLA); *see Hodgson v. Wheaton Glass Co.*, 446 F.2d 527 (3d Cir.1971) (unclaimed FLSA wage damages escheat to federal government). Section 2042 has also been used where a cy pres award was inappropriate but reversion of the funds to the defendant was contrary to the goals of the underlying statute. *See In re Folding Carton Litigation*, 744 F.2d 1252, 1254 (7th Cir.1984) (rejecting cy pres under circumstances and requiring escheat of settlement funds to federal government). When, as with FLCRA, a statute's objectives include deterrence or disgorgement, it would contradict these goals to permit the defendant to retain unclaimed funds. *Simer v. Rios*, 661 F.2d at 676; *See 2 Newberg on Class Actions* at § 10.24. Because section § 2042 permits recovery even after the funds revert to the United States, the interests of the silent class members are fully protected. *In re Folding Carton Litigation*, 744 F.2d at 1255; *see* 28 U.S.C. § 2042.

### 3) Reversion to the defendants

In *Van Gemert v. Boeing*, 739 F.2d 730, 736–37 (2d Cir.1984), the court upheld a decision reverting unclaimed funds to the defendant. The court rejected reversion to the government because the defendant had followed the letter of the law and could not have anticipated its liability. *Id.* Thus, reversion to the defendant may be appropriate when deterrence is not a goal of the statute or is not required by the circumstances.

Although we do not generally disapprove of cy pres, we cannot affirm the district court's application in this case. The district court's proposal benefits a group far too remote from the plaintiff class. Even where cy pres is considered, it will be rejected when the proposed distribution fails to provide the "next best" distribution. *See City of Philadelphia v. American Oil Co.*, 53 F.R.D. 45, 72 (D.N.J.1971) (rejecting price reduction because benefited consumers were too remote from injured class members). The district court's plan permits distribution to areas where the class members may live, but there is no reasonable certainty that any member will be benefited.

The tool for distribution, the IAF, is not an organization with a substantial record of service nor is it limited in its choice of projects. Under such circumstances, any distribution plan should be supervised by the court or a court appointed master to ensure that the funds are distributed in accordance with the goals of the remedy. *In re Agent Orange Product Liability Litigation*, 818 F.2d at 185 ("we believe that the district court must … designate and supervise, perhaps through a special master, the specific programs that will con-

---

**5.** The statute provides:

§ 2041. Deposit of moneys in pending or adjudicated cases

All moneys paid into any court of the United States, or received by the officers thereof, in any case pending or adjudicated in such court, shall be forthwith deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of such court.

This section shall not prevent the delivery of any such money to the rightful owners upon security, according to agreement of parties, under the direction of the court.

§ 2042. Withdrawal

No money deposited under section 2041 of this title shall be withdrawn except by order of court.

In every case in which the right to withdraw money deposited in court under section 2041 has been adjudicated or is not in dispute and such money has remained so deposited for at least five years unclaimed by the person entitled thereto, such court shall cause such money to be deposited in the Treasury in the name and to the credit of the United States. Any claimant entitled to any such money may, on petition to the court and upon notice to the United States attorney and full proof of the right thereto, obtain an order directing payment to him.

sume the settlement proceeds."). The plan does not adequately target the plaintiff class and fails to provide adequate supervision over distribution. We therefore set aside the court's cy pres application as an abuse of discretion.

After the claims period has expired and the amount of the unclaimed fund is known, the district court will be in a better position to determine what remedy will best effectuate the goals of FLCRA and the interests of the silent class members. If the district court is unable to develop an appropriate cy pres distribution, or finds cy pres no longer appropriate, it should consider escheating the funds pursuant to 28 U.S.C. § 2042. In light of the deterrence objective of FLCRA and the nature of the violations, we find that reversion of the funds to the defendants is not an available option.

## II. MAGNITUDE OF THE DAMAGE AWARD

■ ACG contends that the district court's award of $1,846,500 in damages was an abuse of discretion. FLCRA authorized awards of statutory damages of up to $500 per plaintiff per violation. *See Alvarez v. Longboy*, 697 F.2d 1333, 1339–40 (9th Cir.1983). Although the statute is "remedial," the liquidated damages provision permits an award without a showing of actual injury. *See id.* at 1338; *Montelongo v. Meese*, 803 F.2d 1341, 1350 (5th Cir.1986). The civil remedy was provided not only to compensate injuries, but also to promote enforcement of the Act and deter violations. *Longboy*, 697 F.2d at 1339, 1340. Although some courts have stated that one purpose of these damages is punitive in nature, *Salazar–Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1346 (5th Cir.1985), *cert. denied*, 475 U.S. 1035, 106 S.Ct. 1245, 89 L.Ed.2d 353 (1986), we have refrained from interpreting FLCRA to permit imposition of a "penalty disproportionate to the offense." *Longboy*, 697 F.2d at 1340.

In *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1332 (5th Cir.1985), the Fifth Circuit established the seminal test for determining the size of liquidated damages awards. Relying upon *Beliz*, we conclude that in determining whether a particular award serves FLCRA's deterrence and compensation objectives, the court should consider:

1) the amount of award to each plaintiff, 2) the total award, 3) the nature and persistence of the violations, 4) the extent of the defendant's culpability, 5) damage awards in similar cases, 6) the substantive or technical nature of the violations, and 7) the circumstances of each case.

*See id.*

The individual liquidated damage awards for each of the statutory violations ranged from $100 to $500 per violation but did not exceed that given in other cases. *See Longboy*, 697 F.2d at 1340 (recovery of $150 per plaintiff for written notice violations); *Rivera v. Adams Packing Association, Inc.*, 707 F.2d 1278, 1283 (11th Cir. 1983) ($500 for each of two recording violations to 7 plaintiffs); *See Washington v. Miller*, 721 F.2d 797, 803 (11th Cir.1983) ($500 award to 7 plaintiffs for housing violations). The district court's finding of health and safety deficiencies justified the higher awards for the transportation and housing violations. The intentional and non-technical nature of each of the violations also supports a high statutory damage award.

Despite the aggravating nature of the defendant's violations, we find that the award was excessive and an abuse of discretion. The individual awards exceeded what was necessary to compensate any potential injury from the violations. Each class member was awarded between $400 and $1600, even though some class members worked only a few hours. It is unlikely that a plaintiff who worked only a few hours or days could show an injury that approaches $400.

■ The award also exceeds that necessary to enforce the Act or deter future violations. When the class size is large, the individual award will be reduced so that the total award is not disproportionate. *Longboy*, 697 F.2d at 1340. The aggregate

amount of this award was unprecedented even considering the large number plaintiffs and violations. Cases involving a large number of plaintiffs and violations have achieved deterrence objectives with substantially lower aggregate awards. *See Montelongo v. Meese*, 803 F.2d 1341, 1357 n. 1 (159 workers awarded $238,500 damages); *De La Fuente v. Stokely–Van Camp, Inc.*, 514 F.Supp. 68, 80 n. 5 (C.D.Ill. 1981), *aff'd* 713 F.2d 225 (7th Cir.1983) (1500 workers awarded [estimated almost $200,000] statutory damages in addition to compensatory damages); *Alvarez v. Joan of Arc, Inc.*, 658 F.2d 1217 (7th Cir.1981) (300 workers and total award of $30,000); *Alvarez v. Longboy*, 697 F.2d at 1340 (92 workers awarded $13,000 damages); *Salazar–Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1347 (5th Cir.1985) ($15 damages for each of 5 violations awarded to "over 150" workers). We find that the aggregate award of $1,846,500 was disproportionately punitive and an abuse of the district court's discretion.

■ Although we would ordinarily remand to the district court for a recalculation of damages, we will exercise our authority to reduce the award prior to remand in the interest of justice and to preserve judicial resources. *Felder v. United States*, 543 F.2d 657, 671 (9th Cir.1976); *Buckley v. Littell*, 539 F.2d 882, 897 (2d Cir.1976), *cert. denied*, 429 U.S. 1062, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977). Our exercise of this discretion is particularly appropriate where recalculation involves issues that we are equally situated to decide. *See Dale Benz, Inc. v. American Casualty Co.*, 303 F.2d 80, 82 (9th Cir.1962). This litigation has already consumed 13 years of judicial resources, and not a single plaintiff has received any recovery. Because the plaintiff class has sought statutory damages only, the district court's damage assessment did not involve fact specific calculations of actual injury. As we are adequately situated to make our own assessment of the proper level of statutory dam-

ages, we direct the district court to modify its judgment for damages as follows:

1. Failure to register under the Act, 7 U.S.C. § 2043(a) ($0 award)
2. Failure to make written disclosure of terms of employment, 7 U.S.C. §§ 2045(a), (b) ($50 award per plaintiff)
3. Transportation violations, 7 U.S.C. §§ 2044(a)(4), (b)(12) ($100 award per plaintiff)
4. Record keeping violations, 7 U.S.C. § 2045(e) ($100 award per plaintiff)
5. Housing violation, 7 U.S.C. §§ 2044(a)(4), (b)(12) ($200 award per plaintiff)

Defendants Bodine and Fletcher are liable as follows:

1. Engaging an unregistered farm labor contractor, 7 U.S.C. § 2043(c); Failure to obtain records, 7 U.S.C. § 2050c: (total of $75 award per plaintiff for both violations)

As modified, the judgment will provide between $150–$600 per plaintiff before attorneys fees. The minimum recovery is consistent with other large class actions cases involving few violations. *See Longboy*, 697 F.2d at 1340 ($150 to each of 92 plaintiffs for single violation); *De La Fuente v. Stokely–Van Camp, Inc.*, 514 F.Supp. 68, 80 (C.D.Ill.1981) (1500 workers awarded $100 for several violations plus $90 actual damages), *aff'd* 713 F.2d 225 (7th Cir.1983); *Salazar–Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1347 (5th Cir.1985) ($75 damages for 5 violations awarded to "over 150" workers). Yet, the aggregate award, approximately $850,000, is not disproportionately punitive considering the size of the class and the nature of the violations.[6] Although the aggregate award is still larger than any other FLCRA award, this is primarily due to the large number of plaintiffs. Further reducing the award, however, would reward the defendants for violating the rights of a greater number of workers. Our modified award adequately balances the need for deter-

---

**6.** On remand the district court can determine the exact aggregate award after modifying the original individual violations in accord with this opinion.

rence with the inequity of disproportionate punishment.

## III. ATTORNEYS FEES

■ ACG argues that the district court's award of attorneys' fees in the amount of 25 percent of the recovery was improper. The district court awarded attorneys' fees under the common fund doctrine, the common-law rule which permits recovery of fees from the damage award obtained. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). ACG has standing to raise this issue as it is "ancillary" to the main dispute. *See Jackson v. United States*, 881 F.2d 707, 709 (9th Cir.1989).

■ The district court did not abuse its discretion by calculating attorneys' fees as a percentage of the total fund. The Supreme Court has stated that attorneys' fees sought under a common fund theory should be assessed against every class members' share, not just the claiming members. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480, 100 S.Ct. 745, 750, 62 L.Ed.2d 676 (1980). Although statutory awards of attorneys' fees are subject to "lodestar" calculation procedures, a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery. *Blum v. Stenson*, 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984). The Second Circuit has required use of the lodestar method in common fund as well as statutory awards of attorneys' fees. *See In re Agent Orange Product Liability Litigation*, 818 F.2d 226, 232 (2d Cir.1987). We, however, have determined that the choice between lodestar and percentage calculation depends on the circumstances, but that "either method may ... have its place in determining what would be reasonable compensation for creating a common fund." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir.1989). In *Graulty*, we established 25 percent of the fund as the "benchmark" award that should be given in common fund cases. The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate

that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors.

■ Nothing in this case requires departure from the 25 percent standard award. The district court's fee award was well within the range for recoveries of this size. *See* 3 *Newberg on Class Actions*, § 14.03 (20–30 percent is usual common fund award); *In re GNC Shareholder Litigation: All Actions*, 668 F.Supp. 450, 452 (W.D.Penn.1987) (awarding 25 percent attorneys' fees from common settlement fund of over two million dollars). Here the litigation lasted more than 13 years, obtained substantial success, and involved complicated legal and factual issues.

■ Finally, ACG contends that the fee award was improper because the identity of the attorneys to share in the award was not properly disclosed to the trial judge. ACG cites the Second Circuit's requirement that the district court must be notified prior to awarding fees of any fee-splitting arrangement. *In re Agent Orange*, 818 F.2d 216, 226 (1987). The concern in that case was a fee-splitting agreement that awarded certain "investing" attorneys threefold their investment from any fee recovery. The Second Circuit's opinion relied, in part, on their requirement that each attorney receive fees based on the lodestar method—a fee agreement could distort that distribution. *Id.* at 225. Here there is no conflict of interest alleged, nor was this a settlement, where there is great concern that attorneys may sacrifice the interests of the class. *Id.* at 222. Under such circumstances, some courts have granted lump sum attorney fees, permitting the attorneys to split the sum as they see appropriate. *See In re Ampicillin Antitrust Litigation*, 81 F.R.D. 395, 400 (D.D.C. 1978). The district court was not required to specify what share of the common fund award that each attorney could receive.

## CONCLUSION

This case was properly certified for class action treatment. Although the use of cy

pres to distribute unclaimed funds is permissible, the district court's application was inadequate to serve the goals of the statute and protect the interests of the silent class members. We remand for a reformulation of a distribution method upon expiration of the claims period. The damage award was disproportionately punitive and is modified as indicated. The award of attorneys' fees was not an abuse of discretion.

REMANDED

SNEED, Circuit Judge, concurring specially:

I concur in the court's opinion. My purpose in writing a special concurrence is to indicate that the court's opinion does not endorse a percentage recovery in common fund cases in all instances. Lodestar calculations may be required under circumstances in which a percentage recovery would be either too small or too large in light of the hours devoted to the case. Moreover, trial judges will find it useful, I suggest, to inquire early in the proceedings what mode of recovery of fees the attorneys of the plaintiff class anticipate utilizing. The responses to this inquiry no doubt will facilitate case management by the trial judge as well as the final resolution of the fee calculation issue.

FERNANDEZ, Circuit Judge, concurring:

I concur in the decision to remand this case for further proceedings. I also concur in most of Judge Farris' cogent opinion. I cannot, however, agree with what amounts to a direction to the district court to apply cy pres or to escheat any excess funds to the government. Nor can I agree with the further direction that return of the funds to the defendants "is not an available option." While those dicta may not cause difficulty in future cases, they are unfair to the defendants in this one.

Cy pres is a fine concept in its proper place. Thus, it has commonly been used when a trustor has given funds for a specific charitable purpose, and that purpose has now been accomplished. Courts then undertake the risky task of divining what new purposes the trustor would have intended, and they try to approximate that intent as closely as possible. It is also a fine concept when parties have agreed that cy pres shall be used if money is left over at the end of a class action settlement. The individuals with a right to the funds have then committed themselves to that regime, just as a trustor may be said to have done so.

However, in this case it is proposed that the doctrine be used in the absence of any expression of purpose or intent by any of those who have any right to the funds. Its use may well amount to little more than an exercise in social engineering by a judge, who finds it offensive that defendants have profited by some wrongdoing, but who has no legitimate plaintiff to give the money to. It is a very troublesome doctrine, which runs the risk of being a vehicle to punish defendants in the name of social policy, without conferring any particular benefit upon any particular wronged person. This difficulty has, in part, motivated the courts which have rejected the notion. *See, e.g.,* *In re Hotel Telephone Charges,* 500 F.2d 86 (9th Cir.1974), and *Eisen v. Carlisle & Jacquelin,* 479 F.2d 1005, 1013 (2nd Cir. 1973), *vacated on other grounds,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

In fact, even the case that is relied upon in the main opinion, *Nelson v. Greater Gadsden Housing Auth.,* 802 F.2d 405, 409 (11th Cir.1986), appears to be a very unusual use of the cy pres doctrine. There the money was to be spent by defendants on the Authority's own property. It may not have been defendants' preferred way to use that capital, but the improvements would still belong to the Authority. Also, it is worth noting that the Authority appears to be a public entity which is committed to supplying affordable housing to those who could not otherwise afford it. Thus, it appears that the funds may have already been committed to a public use, and only the nature of that use changed and that only slightly.

Here it is said that a judge can use a liquidated damage provision to mulct the defendants for an enormous sum of mon-

ey.[1] Then, if the judge cannot find plaintiffs to give it to, he can do good by distributing that money to someone who has no claim whatever upon it.[2] In my opinion, that is fundamentally wrong.

Moreover, I find the notion of escheat little better, especially where, as here, the United States Government has already had an opportunity to pursue the defendants, has in fact done so, and has collected an amount that satisfied it.

The outcome of this litigation establishes that the defendants' rights to their own money are not superior to the rights of the plaintiffs. However, defendants' rights remain superior to those of anyone else.

Last, but not least, I do not believe that we need to specify the remedies that may or may not be appropriate, if, somehow, the funds are not distributed to the intended plaintiffs. Were it necessary for us to do so, other possibilities could be considered, such as a pro tanto distribution to the plaintiffs who are found. Still, it seems to me that we have done enough if we do no more at this time than strike down the distribution ordered by the district court, since, even under cy pres doctrine, that distribution is improper. The district court could then assess the situation after an attempt to locate the class members has been made and the amount remaining, if any, has been ascertained. Indeed, it is possible that virtually all of the funds will be distributed to those entitled to them. Throughout this litigation, plaintiffs said that was a reasonable possibility. If so, the cy pres issue may become moot.

Therefore, I concur in the result, but, respectfully, must disassociate myself from some of the reasoning.

---

1. Of course, the sum we have allowed is less than the even greater fund the district court was creating.

2. The district judge does not have complete power. As here, some appellate judges will have to agree. See also *Houck v. Folding Carton Admin. Comm.*, 881 F.2d 494 (7th Cir.1989),

*cert. denied,* —— U.S. ——, 110 S.Ct. 1471, 108 L.Ed.2d 609 (1990) and *In re Folding Carton Antitrust Litigation,* 744 F.2d 1252 (7th Cir. 1984), *cert. dismissed,* 471 U.S. 1113, 106 S.Ct. 11, 86 L.Ed.2d 269 (1985), in which two attempts by a district court to apply cy pres failed.