[No. 86793-3.   En Banc.]
Argued May 10, 2012.     Decided September 27, 2012.

CERTIFICATION FROM THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

IN

JOSE GUADALUPE PEREZ-FARIAS ET AL., *Plaintiffs-Appellants*, v.
GLOBAL HORIZONS, INC., ET AL., *Defendants-Appellees*.

*John M. Geyman* (of *Phillips Law Group PLLC*); *Lori J. Isley* and *Amy L. Crewdson* (of *Columbia Legal Services*); *Joachim Morrison*; and *Richard W. Kuhling* (of *Paine Hamblen LLP*), for plaintiffs-appellants.

*Brendan V. Monahan* and *Justo Gonzalez* (of *Stokes Lawrence Velikanje Moore & Shore*) (*Matthew S. Gibbs*, of counsel), for defendants-appellees.

*James S. Elliott* on behalf of Washington State Horticultural Association, Yakima Valley Growers-Shippers Association, Wenatchee Valley Traffic Association, Washington Farm Labor Association, and Washington Growers League, amici curiae.

*Arthur Schmidt*, *Nargess Shadbeh*, *D. Michael Dale*, and *Peter L. Fels* on behalf of Northwest Workers' Justice Project and Oregon Law Center, amici curiae.

*Jeffrey L. Needle* and *Joseph R. Shaeffer* on behalf of Washington Employment Lawyers Association, amicus curiae.

*Kristopher Ian Tefft* on behalf of Association of Washington Business, amicus curiae.

¶1 C. Johnson, J. — These three certified questions from the Ninth Circuit Court of Appeals concern application of the farm labor contractors act (FLCA), chapter 19.30 RCW.

The primary question asks whether a trial court, if awarding statutory damages under the civil remedies provision of the FLCA, RCW 19.30.170(2), must award $500 per plaintiff per violation. We answer this question in the affirmative. The second question asks whether requiring a trial court to award $500 per plaintiff per violation violates due process or public policy. Regarding this question, we answer in the negative and expressly limit our analysis and holding to state due process principles and statutes. The third question asks whether the FLCA provides for awarding statutory damages to persons who have not been shown to have been aggrieved by a particular violation. Because our standing jurisprudence tracks that of the United States Supreme Court, we leave to the Ninth Circuit to answer this question based on its standing jurisprudence and the standing jurisprudence of the Supreme Court.

FACTS

¶2 Jose Guadalupe Perez-Farias, Jose F. Sanchez, and Ricardo Betancourt (Workers) brought this action, as class representatives, against Global Horizons Inc. (Global) and Green Acre Farms Inc. and Valley Fruit Orchards LLC (Growers), alleging in relevant part that Global and the Growers violated the FLCA.[1] The FLCA attempts to protect farm workers against exploitation by farm labor contractors. As regular practice, farmers secure farm workers through the services of farm labor contractors, who act as intermediary between farm workers and farmer. Generally, they recruit, transport, house, and supervise farm workers, and handle their pay arrangements. The FLCA attempts to protect farm workers through the registration of contractors and the regulation of their activities, and by requiring

[1] The Workers also alleged that Global and the Growers violated the federal Migrant and Seasonal Agricultural Workers Protection Act, 29 U.S.C. §§ 1801-1872, and discriminated against the Workers based on race in violation of 42 U.S.C. § 1981 and the Washington Law Against Discrimination, RCW 49.60.010-.505.

farm labor contractors to disclose to farm workers the terms and conditions of employment.

¶3 The Workers' allegations arose from the Growers' decision to use Global to supply the Growers with non-immigrant foreign workers (guest workers) for the 2004 growing season under the federal H-2A temporary agricultural program. The H-2A program allows employers to hire guest workers to perform agricultural labor but only if the United States Department of Labor certifies that a labor shortage exists and finds that the wages of local workers will not be adversely affected. Global allegedly recruited and hired guest workers from Thailand before obtaining approval from the Department of Labor and without first obtaining a farm labor contractor's license from Washington State. The Workers alleged that Global and the Growers either fired local workers or withdrew offers to hire local workers in an effort to manufacture a labor shortage to justify the use of guest workers.[2]

¶4 The Workers filed a motion for partial summary judgment on the FLCA claims, to which Global and the Growers failed to respond. The District Court for the Eastern District of Washington granted the motion, finding that Global and the Growers had violated the FLCA by (1) failing to provide required disclosures, (2) providing false and misleading information about the terms of employment, (3) violating the terms of the working agreement, (4) failing to pay wages due, and (5) failing to provide adequate written pay statements.[3] Because Global and the Growers also failed to contest the Workers' motion for damages

---

[2] The district court certified three subclasses, represented by the Workers, to pursue this action: (1) the "Denied Work Subclass" (397 local workers denied employment by Global); (2) the "Valley Fruit Subclass" (146 local workers hired by Global to work at Valley Fruit's orchards); and (3) the "Green Acre Subclass" (107 local workers hired by Global to work at Green Acre's orchards).

[3] The district court found the Growers were jointly and severally liable with Global for all violations of the FLCA. The FLCA provides that "[a]ny person who knowingly uses the services of an unlicensed farm labor contractor shall be personally, jointly, and severally liable with the person acting as a farm labor contractor." RCW 19.30.200.

under the FLCA, the court granted the Workers' request for statutory damages of $500 per plaintiff per violation under RCW 19.30.170(2),[4] which states:

> [I]f the court finds that the respondent has violated this chapter or any rule adopted under this chapter, it may award damages up to and including an amount equal to the amount of actual damages, or statutory damages of five hundred dollars per plaintiff per violation, whichever is greater, or other equitable relief.

The total amount of statutory damages awarded was $1,857,000.

¶5 The district court's judgment prompted a response from the Growers, who filed a motion for reconsideration. The Growers conceded they were liable for the violations but requested reconsideration of damages, challenging whether statutory damages of $500 should have been given for each violation. The court granted reconsideration and held a bench trial on the damages question.[5]

¶6 The district court held it had discretion under the FLCA to award no damages or to award an amount between $0 and $500 per plaintiff per violation. The court also stated that an award of $500 per plaintiff per violation could be construed to violate the Growers' due process rights by mandating an award of "exorbitant amounts of statutory damages." Excerpts of Record (ER) at 43. In discussing due process, the court distinguished between Global and the Growers' technical violations of the FLCA, such as failing to provide the employer's information on pay stubs, and substantive violations, which resulted in actual harm to workers. Based on factors outlined in *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1310 (9th Cir.

---

[4] The Workers sought only statutory damages under the FLCA.

[5] The presiding judge, Judge McDonald, died before considering the motion for reconsideration. The motion was granted by the new presiding judge, Judge Whaley.

1990),[6] the district court determined that an appropriate amount of statutory damages was approximately $235,000. The court also rejected the Growers' argument that statutory damages were not warranted for some violations because the Workers could not show injury and thus were not aggrieved. Citing *Six (6) Mexican Workers*, the court determined it did not "need to make specific factual calculations of actual injury" to find the Workers were aggrieved. ER at 47.

¶7 On appeal, the Ninth Circuit initially reversed the district court before withdrawing its disposition and certifying to us the following three questions:

(1) Does the FLCA, in particular Washington Revised Code § 19.30.170(2), provide that a court choosing to award statutory damages: (a) must award statutory damages of $500 per plaintiff per violation; or (b) has discretion to determine the appropriate amount to award in damages from among a range of amounts, up to and including statutory damages of $500 per plaintiff per violation?

(2) If the FLCA provides that a court, choosing to award statutory damages, must award statutory damages of $500 per plaintiff per violation, does that violate Washington's public policy or its constitutional guarant[i]es of due process?

(3) Does the FLCA provide for awarding statutory damages to persons who have not been shown to have been "aggrieved" by a particular violation?

*Perez-Farias v. Global Horizons, Inc.*, 668 F.3d 588, 590 (9th Cir. 2011). Interpretation of RCW 19.30.170(2) is a matter of first impression in Washington.

---

[6] The Ninth Circuit in *Six (6) Mexican Workers* reviewed a damage award under the former federal Farm Labor Contractor Registration Act of 1963 (FLCRA), former 7 U.S.C. §§ 2041-2055 (repealed 1983), and concluded that in determining whether an award serves FLCRA's deterrence and compensation objectives, the court should consider (1) the amount of award to each plaintiff, (2) the total award, (3) the nature and persistence of the violations, (4) the extent of the defendant's culpability, (5) damage awards in similar cases, (6) the substantive or technical nature of the violations, and (7) the circumstances of each case. *Six (6) Mexican Workers*, 904 F.2d at 1309. Judge Whaley determined statutory damages amounts, based on these factors, ranging from $10 to $150 per violation.

*Does the FLCA, in particular Washington Revised Code § 19.30.170(2), provide that a court choosing to award statutory damages: (a) must award statutory damages of $500 per plaintiff per violation; or (b) has discretion to determine the appropriate amount to award in damages from among a range of amounts, up to and including statutory damages of $500 per plaintiff per violation?*

¶8 The Ninth Circuit's first certified question asks us to interpret RCW 19.30.170(2), which states:

> [I]f the court finds that the respondent has violated this chapter or any rule adopted under this chapter, it may award damages up to and including an amount equal to the amount of actual damages, or statutory damages of five hundred dollars per plaintiff per violation, whichever is greater, or other equitable relief.[7]

Both the Workers and the Growers argue that a plain reading of the statute supports their respective interpretations.

¶9 The Workers argue the phrase "up to and including" modifies the term "actual damages" but not the term "statutory damages." Under this reading, a trial court has discretion to award either (a) an amount *up to or including actual damages* or (b) statutory damages of $500 per plaintiff per violation, whichever is greater. This reading creates a floor of $500 per plaintiff per violation in all cases.

¶10 In contrast, the Growers argue the phrase "up to and including" modifies both "actual damages" and "statutory damages." Under their reading, a trial court has discretion to award an amount *up to or including* either (a) actual

---

[7] The Ninth Circuit's certified questions presuppose that a trial court has chosen to award statutory damages. We are not asked to address when or under what circumstances a court might make an alternative award as "other equitable relief."

damages or (b) statutory damages of $500 per plaintiff per violation. This reading creates a ceiling of $500 per plaintiff per violation if the court chooses to award statutory damages.

¶11 Generally, we interpret statutes so that all language is given effect with no portion rendered meaningless or superfluous. Under this maxim, both readings advanced by the parties are unsatisfying. On one hand, the Workers' reading largely ignores the apparent discretion afforded a trial court by the language "up to and including." The Workers read the statute to instruct a court that it may choose between actual damages and statutory damages of $500 per plaintiff per violation, whichever is greater, thus requiring the trial court to award a fixed amount, specifically the larger of the actual or statutory damages. But the inclusion of the "up to and including" language strains this reading, as it indicates the trial court is authorized to determine damages from a range.

¶12 On the other hand, while the Growers' reading gives due regard to the language "up to and including," it renders the phrase "whichever is greater" superfluous. The Growers' reading provides trial courts discretion to determine the appropriate amount to award in damages from among a range of amounts, "up to and including" the greater of the amount of actual damages or statutory damages calculated at the rate of $500 per plaintiff per violation. In this case, where no actual damages were proved, the Growers' reading would authorize the trial court to select a figure *up to* $1,998,500 because that is the greater figure.[8] Hypothetically, if instead actual damages were $3 million, then the trial court could select a figure *up to* $3 million. In other words, "whichever is greater" defines the *range* from which a court may select a damages award. But under the Growers' reading, the phrase "up to and including" already

---

[8] Awarding $500 per plaintiff per violation in this case would, according to the Workers, amount to $1,998,500.

defines the range from which a court can select an award. Provided the discretion to award an amount up to and including actual damages or up to and including the statutory maximum, the trial court can select an award from a range *up to* the greater number. Thus, under the Growers' reading, the "whichever is greater" language is rendered gratuitous.

¶13 When a statute is clear and unambiguous, the meaning is derived from its language. If a statute is open to more than one reading, however, we may look beyond its words to determine legislative intent. To this end, the Growers rely on Ninth Circuit case law interpreting a similar provision under the former federal Farm Labor Contractor Registration Act of 1963 (FLCRA), former 7 U.S.C. §§ 2041-2055, to support their reading of the FLCA. In *Alvarez v. Longboy*, 697 F.2d 1333, 1335 & n.2 (9th Cir. 1983), the Ninth Circuit interpreted the following FLCRA remedies provision providing for a private right of action by " 'any person claiming to be aggrieved' ":

> If the court finds that the respondent has intentionally violated any provision of this chapter or any regulation prescribed hereunder, it may award damages up to and including an amount equal to the amount of actual damages, or $500 for each violation, or other equitable relief.

Former 7 U.S.C. § 2050a(b) (repealed in 1983 and replaced by 29 U.S.C. § 1854(c)(1)). As in this case, the plaintiff farm workers in *Alvarez* argued the trial court had no discretion to award less than statutory damages of $500 per violation. The Ninth Circuit disagreed, reasoning that it would be "anomalous for Congress to give the court discretion with respect to the amount of the award where actual damage is proven and to deny that discretion where it is not." *Alvarez*, 697 F.2d at 1339. Noting the remedial nature of the provision, the court concluded that "awards under it are therefore appropriately tied to the number of injured migrant workers. Construing the Act to allow the district court to award less than $500 adequately insures against dispropor-

tionately large awards when the number of migrant workers is large." *Alvarez*, 697 F.2d at 1340.

¶14 The Growers' reliance on the FLCRA is misplaced for several reasons. First, the provision analyzed in *Alvarez* differs from RCW 19.30.170(2) in that it does not contain the phrase "whichever is greater." The Growers place no significance on this distinction, which is understandable given that their reading of the statute renders this language irrelevant. However, it is unclear whether the Ninth Circuit, which noted the plaintiffs' argument rested "entirely upon the placement of commas," *Alvarez*, 697 F.2d at 1339, would have held the way it did in *Alvarez* had the FLCRA provision contained this language.

¶15 Second, the FLCRA was repealed and replaced in 1983 by the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), 29 U.S.C. §§ 1801-1872. The AWPA attempts to address the same problem as the FLCA, namely the protection of farm workers against exploitation by farm labor contractors, but there are significant differences. For example, the AWPA requires that before awarding any damages, the court must find that the defendant intentionally violated the provisions. The FLCA, in contrast, does not require violations to be intentional. Also, the AWPA limits damages for multiple infractions of a single provision to only one violation for purposes of determining the amount of statutory damages, whereas the FLCA makes no such limitation. Finally, under the AWPA if a class action is pursued, damages are capped at $500,000. The FLCA has no such cap. *See* 29 U.S.C. § 1854(c); RCW 19.30.170. As the Workers note, the AWPA is explicitly intended to supplement state law. 29 U.S.C. § 1871. The legislature amended the FLCA to include the civil damages provision in 1985, two years after Congress replaced the FLCRA with the AWPA. Based on the differences between the AWPA and the FLCA, we conclude that our legislature intended the FLCA to provide farm workers

protections greater than those provided under the federal scheme.[9]

¶16 The Workers rely on legislative history to support their reading of the statute. They specifically cite to a prior draft that included the phrase "up to" twice (before both actual damages and statutory damages), which would have explicitly allowed the trial court to award statutory damages of *up to* $500 per plaintiff per violation. The language did not appear in the final amended statute. The Workers argue this change, combined with advocate memorandum, presented to the legislature during its consideration of the bill, suggesting removal of the "up to" language, demonstrates the legislature intended to provide fixed statutory damages. However, there is no history indicating the change was specifically based on such an intent and we are hesitant to speculate as to the reasons for the change. *See Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 64, 821 P.2d 18 (1991).[10]

¶17 Neither the Growers' reliance on federal case law nor the Workers' reliance on legislative history persuades us particularly. Open to both readings, and absent other indicia of legislative intent, we consider and adopt the reading that best furthers the purposes of the statute. The

---

[9] In addition, unlike the FLCRA, the AWPA added a second "up to" phrase specifically providing that a court "may award damages up to and including an amount equal to the amount of actual damages, or statutory damages of *up to* $500 per plaintiff per violation." 29 U.S.C. § 1854(c)(1) (emphasis added). In amending the FLCA to include the civil damages provision in 1985, the legislature chose not to adopt the second "up to" phrase from the AWPA and, instead, added the "whichever is greater" phrase.

[10] The Workers also argue the legislative history demonstrates the FLCA was modeled after the Oregon Farm Labor Contractors Act, which provides for fixed statutory damages. While much of the FLCA shares language with the Oregon scheme, the remedies provisions differ. The Oregon remedies provision provides that "[t]he amount of damages recoverable for each violation under this subsection is actual damages or $1,000, whichever amount is greater." OR. REV. STAT. § 658.453(4). Unlike RCW 19.30.170(2), the Oregon provision does not contain the language "may" or "up to and including." And while there is legislative history demonstrating our legislature was aware of the Oregon scheme, there is no indication the legislature looked to the Oregon remedies provision when amending the FLCA to include RCW 19.30.170(2).

civil remedies provision was enacted to compensate injuries, promote enforcement of the FLCA, and deter violations. The provision permits trial courts to promote these goals through liquidated damages awards in the event that actual damages are difficult or impossible to measure or prove. Both the Growers' and the Workers' readings of the statute permit trial courts discretion to provide liquidated damages under such circumstances, and thus both promote the statute's goals. But the Workers' reading does so firmly by curtailing the trial court's discretion. Under the Growers' reading, a trial court could exercise its discretion to award minimal damages or no damages at all, which is inconsistent with the remedial nature of the FLCA. Remedial statutes protecting workers generally must be liberally construed to further their intended purposes, which in this case includes promoting the enforcement of the FLCA and deterrence. The Growers' reading potentially frustrates rather than furthers these purposes by permitting trial courts to subjectively interpret the "quality" of the violations, potentially lessening the incentives both for statutory compliance and challenging statutory noncompliance. To the contrary, once the existence of violations has been established, courts should review the quantity rather than the quality of violations to effectuate enforcement of the FLCA's requirements and deter future violations. The Workers' reading more firmly upholds the statute's purposes and is therefore the better reading. We hold a court choosing to award statutory damages under RCW 19.30-.170(2) must award statutory damages of $500 per plaintiff per violation.

> *If the FLCA provides that a court, choosing to award statutory damages, must award statutory damages of $500 per plaintiff per violation, does that violate Washington's public policy or its constitutional guarant[i]es of due process?*

¶18 The Growers argue that an interpretation of the FLCA that would create a nondiscretionary floor of $500

statutory damages per plaintiff per violation would result in excessive awards in violation of due process and Washington public policy. The Growers argue their constitutional claim under federal law only; that is, they do not argue for greater due process protection under the Washington State Constitution.[11] The Growers' public policy argument is, at base, simply a version of their due process argument. Pointing to "Washington's strong public policy against punitive damages," they argue, without citation to authority, that to remain nonpunitive in nature, statutory damages must bear some resemblance to the harm alleged. Br. of Appellees at 40. Fundamentally, we find little legal distinction between this argument and the Growers' claim that an automatic $500 per plaintiff per violation award would be unconstitutional as "arbitrary and disproportionate," Br. of Appellees at 39, and answer the Growers' public policy argument consistent with the above analysis.

¶19 Regarding due process, the Growers and the Workers primarily argue over the proper application of federal law. The Growers argue the proper test for review of excessive damages is *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996).[12] The Workers argue *BMW* applies to jury awards of punitive damages, not statutory damages awards. The constitutionality of statutory damages, the Workers argue, is governed instead by *St. Louis, Iron Mountain & Southern Railway v.*

---

[11] Because the Growers have not argued for greater due process protections under the Washington Constitution, we do not address or analyze any potential constitutional differences.

[12] In *BMW*, a jury awarded the plaintiff $4 million in punitive damages against a car dealership that sold a repainted car as "new." The Alabama Supreme Court reduced the award to $2 million. On review, the United States Supreme Court concluded punitive damages must be proportionate and related to the enormity of the offense, and promulgated three factors to review the constitutionality of punitive damages awards: the degree of reprehensibility, the disparity between plaintiffs' harm or potential harm and punitive damages awarded, and the difference between the damages awarded and civil penalties authorized or imposed in comparable cases. *BMW*, 517 U.S. at 574-75.

*Williams*, 251 U.S. 63, 40 S. Ct. 71, 64 L. Ed. 139 (1919).[13] We recognize that the United States Supreme Court has not ruled that *BMW* applies to awards of statutory damages, and the parties do not cite to any cases where an award of statutory damages has been invalidated under *BMW* or *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003).[14] Though there are reasons to question the applicability of *BMW* to awards for statutory damages, we decline to interpret federal law in an answer to a question certified from the Ninth Circuit. The Ninth Circuit is the appropriate body to address this issue.[15]

---

[13] In *Williams*, two passengers were overcharged 66 cents each on their purchase of rail tickets. To prevent such overcharges, the Arkansas Legislature had authorized a private right of action with an award of statutory damages of " 'not less than fifty dollars nor more than three hundred dollars.' " *Williams*, 251 U.S. at 64 (quoting 1887 Ark. Acts 227). The trial court awarded the passengers $75 each, and the railroad appealed, asserting the penalty was not " 'proportionate to the actual damages sustained' " and the statutory damages provision violated due process. *Williams*, 251 U.S. at 64. The United States Supreme Court rejected the railroad's argument, deferring to the Arkansas Legislature to set the amount of statutory damages to protect the public good ("the Legislature may adjust its amount to the public wrong rather than the private injury"). *Williams*, 251 U.S. at 66. The Court concluded a statutory penalty award should be affirmed unless it is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Williams*, 251 U.S. at 67. *Williams* has been applied post-*BMW* to review awards of statutory damages. *See, e.g., Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574 (6th Cir. 2007).

[14] In *Campbell*, the Court addressed a due process challenge to a punitive damages award and considered the three *BMW* factors. The Court concluded the punitive damages award, which amounted to 145 times the compensatory damages award, violated due process. The Court declined to impose a bright-line ratio to compensatory damages that a punitive damages award cannot exceed but nevertheless expressed a general preference for single-digit ratios. *Campbell*, 538 U.S. at 425.

[15] We are aware of but one Washington case somewhat on point, *State v. WWJ Corp.*, 138 Wn.2d 595, 980 P.2d 1257 (1999), and its relevancy is questionable. In *WWJ*, the State brought a civil action against a mortgage broker and his company for 250 separate violations of the Mortgage Broker Practices Act (MBPA), chapter 19.146 RCW. Each violation of the MBPA is subject to a $2,000 penalty pursuant to the Consumer Protection Act, chapter 19.86 RCW. Following a grant of summary judgment, the State requested, and the court granted, the maximum $2,000 penalty per violation totaling $500,000. On appeal, the defendant argued the amount of the civil penalty violated due process. The Court of Appeals declined to reach the issue, holding it could not be raised for the first time on appeal. For the "sole purpose" of analyzing whether the defendant's due process claim was

¶20 Our legislature can and does provide for fixed statutory damages awards in an array of statutory provisions, many of which create awards that are nondiscretionary and "automatic." *See, e.g.*, RCW 9.35.010(6) ($500 or actual damages, whichever is greater, for illegally obtaining financial information), .030(3) ($500 or actual damages, whichever is greater, for stealing identity of another to solicit undesired mail); RCW 27.44.050(3)(c) ($500 or actual damages, whichever is greater, for illegally obtaining Indian artifacts by disturbing ancestral graves); RCW 19.190-.040(1) ($500 or actual damages, whichever is greater, for improper commercial text message received); RCW 9.26A-.140(4) (actual damages or $5,000 per violation, whichever is greater, for unauthorized sale of telephone records). In essence, it is not the nondiscretionary or "automatic" nature of the $500 per plaintiff per violation award under RCW 19.30.170(2) that the Growers contest. Rather, the Growers contest the severity of the prospective award in this case.[16] The Growers are, in effect, asking us to create an arbitrary cap on damages based on the number of violations committed. The legislature has declined to create such a cap, diverging from the federal scheme under the AWPA in this regard.[17] We find nothing in either Washington case law or the statutes to support capping an award of damages under these circumstances. A contrary holding would be inconsistent with the overall purposes and aim of the statute. We hold no state public policy or due process principles require reduction in the total damages mandated by statute. We

"manifest" under RAP 2.5(a)(3), we accepted the defendant's argument that *BMW* applied to the civil penalty. After analyzing each factor, we concluded that even "[i]f *BMW* applied to [the] $500,000 civil fine, [the defendant] has not shown how the fine is unconstitutional." *WWJ*, 138 Wn.2d at 607. In a footnote, we explicitly declined to decide whether *BMW* applies to statutorily imposed civil penalties. *WWJ*, 138 Wn.2d at 606 n.8. We had no occasion in *WWJ* to address whether *BMW* applies to statutory damages.

[16] Presumably, if the trial court had ruled it had discretion to award a range of statutory damages and awarded the statutory maximum per plaintiff per violation, the Growers would have the same complaint.

[17] As discussed previously, the AWPA caps damages awards in class actions at $500,000, 29 U.S.C. § 1854(c)(1), whereas the FLCA has no such cap.

leave to the Ninth Circuit, which possesses the authority to either agree or disagree with any interpretation of federal law by us, the chore of determining whether *BMW*, or other principles of federal due process, applies.

██ ██ *Does the FLCA provide for awarding statutory damages to persons who have not been shown to have been "aggrieved" by a particular violation?*

¶21 The FLCA allows a private right of action to "any person *aggrieved* by a violation of this chapter or any rule adopted under this chapter." RCW 19.30.170(1) (emphasis added). It does not, however, define the term "aggrieved." The Growers argue that under the FLCA, each worker must make an individual showing that a particular violation affected them before a trial court may award damages, whether actual or statutory. While the Growers use the term "affected," they equate "affected" with "harmed," arguing that for certain violations in this case no evidence exists of some workers claiming to have "suffered harm." Br. of Appellees at 45. The Workers, on the other hand, argue a worker is "aggrieved" under the FLCA if the worker falls within the group of persons the statute was designed to protect and the Growers violated his or her rights under the statute.

¶22 The term "aggrieved" is defined, in relevant part, as "suffering from an infringement or denial of legal rights." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 41 (2002). This definition accords with our case law interpreting the term "aggrieved." *See State v. A.M.R.*, 147 Wn.2d 91, 95, 51 P.3d 790 (2002) (interpreting the meaning of "aggrieved," as used in the Basic Juvenile Court Act, chapter 13.04 RCW, and concluding that "[w]hen the word 'aggrieved' appears in a statute, it refers [broadly] to 'a denial of some personal or property right, legal or equitable'" (internal quotation marks omitted) (quoting *Sheets v. Benevolent & Protective Order of Keglers*, 34 Wn.2d 851, 854-55, 210 P.2d 690

(1949))). Our standing jurisprudence tracks that of the United States Supreme Court, which has recognized that "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3, 93 S. Ct. 1146, 35 L. Ed. 2d 536 (1973). The Ninth Circuit has analyzed this issue in *Alvarez*, 697 F.2d 1333, and *Six (6) Mexican Workers*, 904 F.2d 1301, albeit under the standing provision of the repealed FLCRA, former 7 U.S.C. § 2050a(a), which contained language nearly identical in form and substance to RCW 19.30.170(1).[18] We find nothing in Washington case law that conflicts with this jurisprudence or that would influence the Ninth Circuit's analysis. Accordingly, we leave to the Ninth Circuit to decide this issue based on its standing jurisprudence and the standing jurisprudence of the United States Supreme Court.

CONCLUSION

¶23 We answer the certified questions as follows:

(1) Under RCW 19.30.170(2), a court choosing to award statutory damages must award statutory damages of $500 per plaintiff per violation.

(2) We decline to set a cap for damages under RCW 19.30.170(2) and defer to the Ninth Circuit with regard to whether *BMW* or *Williams* applies to awards for statutory damages.

---

[18] Former 7 U.S.C. § 2050a(a) provides a private right of action to "[a]ny person claiming to be aggrieved by the violation of any provision of this chapter or any regulation prescribed hereunder." The AWPA, which replaced the FLRCA, contains a similar standing provision, permitting "[a]ny person aggrieved by a violation of this chapter or any regulation under this chapter" to file suit in any district court of the United States. 29 U.S.C. § 1854(a).

(3) We leave to the Ninth Circuit to decide this issue based on its standing jurisprudence and the standing jurisprudence of the United States Supreme Court.

MADSEN, C.J., and CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, WIGGINS, and GONZÁLEZ, JJ., concur.