Michael A. **VANDERVORT** and U.S. Sample Services, Inc., on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**BALBOA CAPITAL CORPORATION,**
Defendant.

Case No. SACV 11–1578–JLS (JPRx).

United States District Court,
C.D. California.

Signed March 27, 2014.

Aytan Y. Bellin, Bellin & Associates LLC, White Plains, NY, Joseph R. Compoli, Jr., Law Office of Joseph Compoli, Cleveland, OH, Roger Furman, Los Angeles, CA, for Plaintiffs.

Carl N. Marschall, Lance A. Brewer, Brewer and Brewer, Newport Beach, CA, Nancy M. Barnes, Thompson Hine LLP, Cleveland, OH, Matthew Thomas Heartney, Arnold and Porter LLP, Los Angeles, CA, for Defendant.

### ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL

JOSEPHINE L. STATON, District Judge.

## I. INTRODUCTION

Before the Court is a Motion for Final Approval of Class Settlement filed by Plaintiffs Michael A. Vandervort and U.S. Sample Services, Inc. (Mot., Doc. 120.) Defendant Balboa Capital Corporation agreed not to oppose the Motion. (*Id.* at 1–2.) Pursuant to this Court's Orders, Plaintiffs filed supplemental memoranda as to settlement administration and class member reactions to the settlement. (Suppl. Br., Doc. 121; Second Suppl. Br., Doc. 124.) Having reviewed the papers, held a fairness hearing, and taken the matter under submission, the Court GRANTS Plaintiffs' Motion.

## II. BACKGROUND

### A. Procedural History

Plaintiffs in this class action allege that during the period from October 12, 2007 through November 23, 2011, Defen-

dant sent them solicited and unsolicited fax advertisements in violation of state and federal law. On November 23, 2011, Plaintiffs filed a First Amended Complaint alleging causes of action for violation of the Telephone Consumer Protection Act ("TCPA") and California Business & Professions Code § 17538.43, and seeking damages and injunctive relief. (First Am. Compl. ("FAC"), Doc. 18.)

On October 23, 2012, the Court granted in part and denied in part Plaintiffs' motion for class certification. (Class Cert. Order, Doc. 54.) The Court certified a Rule 23(b)(3) class under the TCPA, consisting of:

> All persons in the United States from October 12, 2007 through November 23, 2011 to whom Defendant sent or caused to be sent a solicited or unsolicited facsimile advertisement that advertised the commercial availability or quality of any property, goods, or services, and contained an opt-out notice identical or substantially similar to that contained on the facsimile advertisement attached as Exhibit 1 to the First Amended Complaint.

(*Id.* at 17.) The Court denied Plaintiffs' request for certification of another class under the TCPA class and a class under California Business & Professions Code § 17538.43. (*Id.* at 6–8.)

On April 5, 2013, the Court heard oral argument on the parties' cross motions for summary judgment. (Docs. 65, 66, 88.) At the hearing, the Court stated that it would delay issuing its rulings on the motions until after the parties attended a settlement conference before a magistrate judge. (Doc. 90 at 28.) On May 20, 2013, following a day–long settlement conference before the Honorable Jay Gandhi, the parties settled the case and signed a Memorandum of Understanding memorializing their agreement. (*See* Preliminary Approval Order at 3, Doc 117.) On October 25, 2013, the parties signed a fully executed settlement agreement. (Aytan Y. Bellin Decl. Ex. A ("Settlement"), Doc. 120–2.)

On August 16, 2013, Plaintiffs moved for preliminary approval of the Settlement and approval of the form and method of class notice. (Doc. 102.) The Court preliminarily approved the Settlement on November 20, 2013. (Preliminary Approval Order.) As part of the preliminary approval, the Court ordered the parties to modify the class notice and claims forms to remove an ambiguity regarding the deadline to submit claims, make other minor edits to the notices, and add a section to the notice on how lawyers and class representatives would be paid. (*Id.* at 15.) The parties submitted revised versions of the proposed forms, which the Court approved. (Docs. 118, 119.)

## B. Settlement

The Settlement applies to a class consisting of "all persons in the United States who, from October 12, 2007 through November 23, 2011, were sent or caused to be sent one or more facsimile advertisements by Defendant Balboa Capital Corporation, its employees, agents, vendors or contractors." (Settlement ¶ 2(c).)

Under the Settlement, Defendant shall make a total payment of no less than $2.3 million and no more than $3.3 million. (*Id.* ¶ 2(a)-(b).) That amount will cover payments to class members, class representative incentive payments of $10,000 in total, and attorney's fees and costs. (*Id.* ¶¶ 2(a)-(b), 10.) In return, class members agree to release claims that "are or could be based on, arise from or relate in any way to the claims asserted in this Litigation or to Defendant's alleged sending or transmission of fax advertisements to Plaintiffs

... from October 12, 2007 through November 23, 2011." (*Id.* ¶ 11(a).)

If the sum of valid claims, the incentive award, and attorney's fees and costs ("Total Payment") is greater than or equal to $2.3 million but less than or equal to $3.3 million, then the payments to class members will be distributed as follows: Claimants who submit an affidavit or declaration under penalty of perjury stating that they received a fax or faxes will be eligible for a cash payment of between $175 and $275, depending on the number of faxes they declare they received. (*Id.* ¶¶ 6(a), 8.) Claimants who submit copies of the faxes they received will be eligible for a cash payment of $500 per fax submitted. (*Id.* ¶ 8.)

If the total payment is less than $2.3 million, then the balance shall be distributed to claimants on a *pro rata* basis, based on the amount they would have received had the Total Payment been greater than $2.3 million, up to a maximum of $1,500 per fax claimed and five faxes per claimant. (*Id.* ¶¶ 2(b), 8.) If the total payment remains under $2.3 million even with the pro-rata increase to payments, the balance will be distributed *cy pres* to a charity agreed upon by the parties and approved by the Court. (*Id.* ¶ 2(b).) [1] By contrast, if the total payment is greater than $3.3 million, then each claimant's payment will be reduced on a *pro rata* basis. (*Id.* ¶¶ 2(a), 8.)

Pursuant to the Settlement, class counsel moved for attorney's fees after the class administrator finished sending out the Short–Form Notices. (*Id.* ¶ 9; Mot.) Defendant agreed not to object to class counsel seeking approval of attorney's fees up to one-third of the ceiling settlement amount of $3,300,000. (Settlement ¶ 9.) The Settlement does not state that it is contingent upon the Court approving this particular amount in fees. (*See id.*) Finally, Defendant agreed to the entry of a permanent injunction prohibiting it from advertising by fax in violation of the TCPA. (*Id.* ¶ 3.)

## C. Notice and Response

Notice was sent to class members pursuant to the method approved by the Court. The class notice comprised a "Short–Form Notice" that briefly described the litigation and explained the terms of the Settlement Agreement, including class members' options to submit a claims form, opt-out of the settlement, and/or object to the settlement. (Short Form Notice, Doc. 118–2; Settlement ¶ 4(f).) It also directed class members to a website containing a more detailed "Long–Form Notice." (Short–Form Notice; Long–Form Notice, Doc. 118–1; Claim Form, Doc. 118–3.)

On December 6 and 9, 2013 the class administrator successfully faxed approximately 35,000 Short–Form Notices to fax numbers provided by Defendant. (Suppl. L. Stephens Tilghman Decl. ¶ 2, Doc. 121–1.) [2] Pursuant to the Settlement, Defendant provided the class administrator with mailing addresses, to the extent available, for class members for whom the fax transmission failed. (Settlement ¶ 4(f).) As a

---

1. Plaintiffs propose that any *cy pres* distribution be made to Public Citizen, a nonprofit organization that litigates on behalf of consumers and has been involved in pursuing TCPA litigation. (Mem. at 11 n. 7, Doc. 120–1.)

2. The class administrator sent faxes to all persons who were "activated" in Defendant's marketing database during the class period of October 12, 2007 through November 23, 2011. (Settlement ¶ 4(a).) If the fax transmission to a class member failed on the first attempt, the class administrator was to make a second attempt at fax transmission. (*Id.* ¶ 4(f).)

result, on December 13, 2013, the class administrator sent approximately 26,500 Short–Form Notices by first-class mail to class members who did not receive a fax notice but for whom the class administrator had received mailing addresses from Defendant. (Suppl. Tilghman Decl. ¶ 3.) According to the settlement administrator, approximately 22,000 settlement notices were mailed successfully. (*Id.*) Thus, approximately 57,000 notices were delivered successfully. (*Id.* ¶ 4.)[3]

Class members had until February 4, 2014, to exercise their rights under the Settlement. (Short Form Notice.) All class members who failed to opt out of the Settlement within that that time period are bound by the release in the Settlement. (Settlement ¶ 11.) As of February 18, 2014, the class administrator received 271 claim forms. (Suppl. Tilghman Decl. ¶ 5.)[4] Of those, 70 were either incomplete or had other irregularities that required review by counsel. (*Id.* ¶ 6; Suppl. Mem. at 2.) The class administrator did not receive any objections to the settlement, and only one person opted out of the settlement, without explanation. (Suppl. Tilghman Decl. ¶¶ 7–8; Second Suppl. Tilghman Decl. ¶ 4.)[5]

The Court's Order on Preliminary Approval also directed Plaintiffs to submit a sufficient number of declarations from class members discussing their reactions to the proposed settlement. (Preliminary Approval Order at 12.) Accordingly, Plaintiffs' counsel sent a letter to claimants through the class administrator, asking for a short declaration as to their opinion on the settlement. (Second Suppl. Br. at 1.) On March 18, 2014, class counsel provided

statements from 48 class members with their reactions to the settlement. (*Id.* at 1–6.) The vast majority of the reactions were positive. The reactions are discussed in Section IV.A.7 below.

## III. LEGAL STANDARD

 Before approving a class-action settlement, Rule 23 of the Federal Rules of Civil Procedure requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate. Fed.R.Civ.P. 23(e)(2). "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir.2003) (internal citation and quotation marks omitted).[6] "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir.1982). "It is the settlement taken as a whole, rather than the individual component parts, that must

---

3. Previously, the class administrator successfully sent approximately 56,000 notices regarding the pendency of the action. (*Id.*)

4. Two additional claims were received after the deadline. (Second Suppl. L. Stephens Tilghman Decl. ¶ 2, Doc. 124–1.)

5. Ten class members previously opted out in response to the notice of the pendency of the action. (Suppl. Tilghman Decl. ¶ 7.)

6. Factor [7], the presence of a governmental participant, does not apply to this case.

be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton,* 327 F.3d at 960 (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir.1998)).

### A. Final Approval of Settlement

■ The Courts finds the factors listed above favor final approval of the proposed settlement.

### 1. Strength of Plaintiffs' Case

Plaintiffs argue that they believe they have a strong case, but that the case raised several novel legal issues that favor approving a settlement. In particular, Plaintiffs note that this was the first case in which a court certified a nationwide class of recipients of fax advertisements allegedly violating the opt-out provisions of the TCPA; that Defendant has asserted a "substantial compliance" defense, on which the Ninth Circuit has not yet ruled; and that the damages award could trigger due process concerns. (Mem. at 13.) The Court notes that Defendant has strongly defended this case, including by filing a motion for summary judgment. In light of these considerations, the Court finds that this factor weighs in favor of granting final approval.

### 2. Likely Expense and Duration of Further Litigation

The likely expense and duration of further litigation also favors settlement. The parties have filed cross-motions for summary judgment. Absent a settlement, if summary judgment were not granted as to all claims, the parties would incur additional costs in preparing for trial. If instead summary judgment were granted on all claims, there is a high likelihood that this case would be appealed to the Ninth Circuit. (*See* Mem. at 14.) In light of these considerations, the Court finds that this

factor weighs in favor of granting final approval.

### 3. Risk of Maintaining Class Certification

Plaintiffs argue in a footnote that "there is some small risk of decertification" if the Ninth Circuit rules adversely on the issue of certifying a class similar to the class certified in this action. (Mem. at 9 n. 3.) The Court agrees with Plaintiffs that this presents at best a small risk. Nonetheless, the presence of such a risk would weigh in favor of granting final approval, as the settlement would eliminate the risk.

### 4. Amount Offered in Settlement

The Court finds that the amount offered in settlement is reasonable.[7] Plaintiffs sought $5 million in statutory damages (plus treble punitive damages) for the class that was certified, and reached a proposed settlement with a $2.3 million floor and a $3.3 million ceiling. *See Officers for Justice,* 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.").

The allocation of settlement funds is likewise reasonable. A class member who submits a claim with copies of the fax advertisement they received is awarded $500 for each fax (subject to a possible upward or downward pro rata adjustment), (Settlement ¶ 8), which is the same amount of statutory damages awarded (subject to a trebling of damages for a willful or knowing violation by Defendant). 47 U.S.C. § 227(b)(3)(B), (C). Class members that submit a sworn declaration as to the number of faxes received will receive between $175 and $275, subject to a possible upward or downward pro rata adjustment. (Settlement ¶ 8); *see In re Omnivi-*

---

7. The Court previously found the proposed settlement was the result of an arms-length

negotiation. (Preliminary Approval Order at 7.)

*sion Techs., Inc.,* 559 F.Supp.2d 1036, 1045 (N.D.Cal.2008) ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits."). Attorney's fees and an incentive award are to be awarded from the settlement fund, which is not unusual or unreasonable. (*See* Preliminary Approval Order at 9 (citing *Staton,* 327 F.3d at 969).)[8] Finally, in the event the settlement floor amount is not met based on the distribution to claimants, the attorney's fees, and the incentive award, the parties propose a *cy pres* distribution to Public Citizen, a nonprofit organization that has successfully litigated TCPA cases on behalf of consumers. (Mem. at 11 n. 7.) The Court finds the proposed *cy pres* distribution appropriate, as it would further the objectives of the TCPA and benefit the interests of silent class members. *See Dennis v. Kellogg Co.,* 697 F.3d 858, 865 (9th Cir. 2012) ("A cy pres award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class.") (citations and quotation marks omitted); *accord 3081 Main Street, LLC v. Americas Merchant Receivables LLC,* Case No. 3:11 CV 01386(JCH), ECF No. 34, at *3 (D.Ct. Nov. 16, 2012) (approving Public Citizen for *cy pres* distribution in TCPA class action settlement).

Accordingly, this factor weighs in favor of granting final approval.

### 5. Extent of Discovery Completed

■ This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1239 (9th Cir.1998). Fact discovery closed on Octo-ber 29, 2012. (Doc. 25.) Class counsel represents that they propounded written discovery, took multiple depositions, and responded to Defendant's written discovery requests. (Bellin Decl. ¶ 13.) The parties filed cross-motions for summary judgment and ultimately settled the case after the close of fact discovery. (Docs.65, 66, 97.) Given the parties' representations regarding completed discovery, and the Court's review of the parties' motions for summary judgment, the Court finds that the parties had sufficient information to make an informed decision about settlement. Accordingly, this factor weighs in favor of granting final approval.

### 6. Experience and Views of Counsel

All three of class counsel have experience in TCPA cases, and two have experience in complex class action litigation. (Bellin Decl. ¶ 7; Roger Furman Decl. ¶ 4, Doc. 120–3; Joseph R. Compoli Decl. ¶ 3, Doc. 120–4.) Class counsel and Defendant's counsel endorsed the Settlement as fair, reasonable, and adequate. (Bellin Decl. ¶ 15, Furman Decl. ¶ 7, Compoli Decl. ¶ 5.) Accordingly, this factor weighs in favor of granting final approval.

### 7. Reaction of Class Members to Proposed Settlement

As discussed above, approximately 57,-000 notices were successfully sent either by fax or first class mail. Only one person has opted out of the settlement, without explanation, and no one has objected to the settlement. Class counsel also requested and received declarations from claimants as to their reaction to the settlement. (Second Suppl. Br.) Class counsel provided the Court with 48 declarations that were made by claimants. (*Id.*) Almost all of the reactions were positive—many claimants

---

8. The Court addresses the amount of the incentive award and attorney's fees in Sections IV.B and IV.C below.

expressed frustration with having received faxes from Defendant and were very happy that Defendant would be held accountable. Several claimants were critical of certain aspects of the settlement.[9] Three claimants believed that class members should be awarded damages based on Defendant's records of faxes sent, and that class members should not have to prove the number of faxes they received. (*Id.* at 2:10–12, 3:15–18, 4:8–10.) However, the parties represented at the hearing that while they have records indicating to whom faxes may have been sent, they do not have records of who actually received a fax or how many faxes they received. Moreover, the claim form allows claimants to provide a declaration as to the number of faxes they received, without providing the actual faxes received, which the Court finds fair and reasonable under the circumstances. Three other claimants suggested or stated either that the total settlement amount or the per-fax amount is too low. (Second Suppl. Br. at 2:16–18, 5:16.) However, for the reasons stated above, the Court finds these amounts to be fair and reasonable. Thus, although the number of claimants is relatively small,[10] their reactions were very positive overall. This factor therefore weighs in favor of granting final approval.

## B. Incentive Award

District courts have the discretion to award incentive payments to named plaintiffs as compensation for their actions taken on behalf of the class. *Staton,* 327

F.3d at 977. The Court must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions Inc.,* 715 F.3d 1157, 1164 (9th Cir.2013). Here, Plaintiffs request a combined $10,000 incentive award. (Settlement ¶ 10.) In granting preliminary approval, the Court found the amount justified based on time spent (1) seeking out class counsel; (2) educating class counsel about the facts of the case and providing them with documents; (3) responding to requests for documents, admissions, and interrogatories; (4) appearing for their deposition; (5) participating in telephonic mediations and reviewing numerous settlement offers; and (6) flying from Ohio to California to attend the in-person settlement conference before Judge Gandhi. (Preliminary Approval Order at 10–11.) For the same reasons, the Court finds the amount justified for purposes of final approval.

## C. Award of Attorney's Fees and Costs

Plaintiffs' Counsel seeks an award of attorney's fees and costs in the amount of $1.1 million, which represents 33% of the ceiling on the $3.3 million settlement fund. (Mem. at 17–18.) Rule 23 permits a court to award "reasonable attorney's fees ... that are authorized by law or by the parties' agreement." Fed.R.Civ.P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the par-

---

9. Each of these individuals submitted claims instead of opting out or objecting. Some even expressed approval of the settlement overall despite specific criticisms.

10. In considering the proposed settlement as a whole, the Court does not find that the relatively small number of claimants renders the settlement unfair. *See Staton,* 327 F.3d at 960 (courts consider the settlement as a

whole for overall fairness). The parties' notice and claims method was reasonable, (Preliminary Approval Order at 12–13), and the proposed *cy pres* distribution guarantees Defendant will pay the floor amount of the settlement. *Cf. Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1306–07 (9th Cir.1990) (focusing on amount of unclaimed funds as opposed to number of claimants).

ties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir.2011).

 The benchmark for a fee award in a common fund case is 25% of the recovery obtained. *See id.* at 942 ("Where a settlement produces a common fund for the benefit of the entire class, .... courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record for any 'special circumstances' justifying a departure."). In "megafund" cases, fees will commonly be under the benchmark, while in smaller cases—particularly where the common fund is under $10 million—awards more frequently exceed the benchmark. *See Lopez v. Youngblood*, No. CV–F–07–0474 DLB, 2011 WL 10483569, *13 (E.D.Cal. Sept. 2, 2011).

The Ninth Circuit has identified a number of factors the Court may consider in assessing whether an award is reasonable and whether a departure from that figure is warranted, including: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir.2002).

### 1. Results Achieved

Class counsel achieved certification of the first federal TCPA class covering recipients of faxes that lacked compliant opt-out notices, regardless of whether the fax advertisements were solicited or unsolicited, and regardless of whether the defendant had an established business relationship with the persons to whom it sent the fax advertisements. (Mem. at 19.) Class counsel achieved a settlement whereby claimants can receive the statutory damages amount per fax if they provide actual evidence of faxes received, or a slightly lesser amount per fax if they provide only a declaration. The Court finds that the

unprecedented nature of the class certified and the settlement reached for the class present an exceptional result warranting an upward departure from the benchmark. *See Vizcaino v. Microsoft Corp.*, 290 F.3d at 1048 (finding of exceptional results warranted where "counsel pursued [the] case in the absence of supporting precedents").

### 2. Risk of Litigation

The risks presented by this litigation also support an upward departure from the Ninth Circuit's benchmark. As discussed above, class counsel pursued and obtained certification of an unprecedented class. The Court further notes Defendant's vigorous opposition to this case, including its interlocutory appeal of the Court's class certification order as well as its motion for summary judgment, which raised numerous significant defenses to the claims presented.

### 3. Skill Required and Quality of Work

This nationwide class action presented challenging issues of first impression concerning the TCPA, which required a high degree of skill to litigate successfully. The exceptional results achieved in this case are directly attributable to class counsel's high quality work. Accordingly, this factor supports an upward departure from the benchmark.

### 4. Contingent Nature of the Fee and Financial Burden Carried by Plaintiffs

Class counsel took this case on a contingent basis, and between the three of them spent approximately 1,100 hours on the case over two years. (Bellin Decl. ¶ 16; Furman Decl. ¶ 8; Compoli Decl. ¶ 6.) Class counsel also fronted approximately $50,000 in costs. (Bellin Decl. ¶ 19.) While this by itself does not support an upward departure from the benchmark, the Court does not find this factor dispositive. *See Vizcaino*, 290 F.3d at 1048

(courts must consider all of the circumstances of the case in arriving at a percentage fee award).

### 5. Conclusion as to Fee Award

Considering all of the circumstances described above, the Court finds that a 33% award of fees and costs is warranted. The Court further finds that a percentage award based on the ceiling amount of the settlement fund is appropriate. *See Williams v. MGM–Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir.1997) (district court abused its discretion by basing fee on class members' claims against fund rather than on percentage of entire fund or lodestar); *In re Wal–Mart Stores Inc. Wage & Hour Lit.*, No. 06–02069 SBA, 2011 WL 31266, *3, *7 (N.D.Cal. Jan. 5, 2011) (basing fee percentage on ceiling amount, following supplemental briefing on class actions structured with a floor and ceiling amount). Accordingly, the Court awards attorney's fees and costs in the amount of $1.1 million, or 33% of the $3.3 million settlement fund ceiling amount. As class counsel expended $54,649.79 in costs, (Bellin Decl. ¶ 19, Exs. D, E), the award amounts to $54,649.79 in costs and $1,045,350.21 in fees.

The reasonableness of this amount is confirmed by a cross-check with a lodestar comparison. *Vizcaino*, 290 F.3d at 1050–51. Class counsel provide documentation as to the hours each of them billed in this litigation, and they anticipate billing a total of 1140.8 hours. (Bellin Decl. Ex. C; Furman Decl. Ex. A; Compoli Decl. Ex. A; Mem. at 23.) The Court agrees this amount is reasonable given the length of the case and the issues involved. Moreover, class counsel's rates—between $300 and $400—are reasonable given that each has at least twenty years of litigation experience. (Bellin Decl. ¶¶ 3, 8; Furman Decl. ¶¶ 2, 8; Compoli Decl. ¶¶ 2, 6; *see also* Mem. at 24 (noting cases in this district have approved hourly rates ranging

from $150 to $1,000).) Class counsel represent that multiplying their hours by their rates results in a lodestar of $415,155. (Mem. at 25.) The Court's $1,045,350.21 fee award is 2.52 times higher than the lodestar, which is well within the range of acceptable multipliers in a common fund case. *See Vizcaino*, 290 F.3d at 1051 n. 6 (noting majority of fee awards are 1.5 to 3 times higher than lodestar).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for Final Approval of Class Settlement. The Court finds the settlement to be fair, adequate and reasonable, and accordingly grants final approval of the settlement. The Court awards class counsel $54,649.79 in costs and $1,045,350.21 in fees, based on an award of 33% of the $3.3 million settlement fund ceiling amount. The Court awards each of the two Plaintiffs $5,000 as an incentive award. Distribution of the settlement funds to claimants shall be made in accordance with the method outlined in the Settlement. If a *cy pres* distribution is necessary to meet the floor settlement amount, the distribution shall be made to Public Citizen.

The parties shall submit a proposed judgment in accordance with this Order forthwith.