M. SMITH, Circuit Judge,
with whom KOZINSKI, Chief Judge, and O’SCANNLAIN, BYBEE, BEA, and IKUTA, Circuit Judges, join,
dissenting from the denial of rehearing en banc:
Class action litigants are increasingly likely to employ the doctrine of cy pres to settle complex class actions.[1] Until recently, courts in our circuit were well-positioned to address the issues associated with this trend because our cy pres jurisprudence was clear. Under a line of cases beginning with Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301 (9th Cir.1990), we required that a cy pres award (1) be reasonably certain to benefit the class, and (2) advance the objectives of the statutes relied upon in bringing suit. See also Nachshin v. AOL, LLC, 663 F.3d 1034 (9th Cir.2011); Dennis v. Kellogg Co., 697 F.3d 858 (9th Cir.2012). By approving a settlement that fails both criteria, however, the majority in this case creates a significant loophole in our case law that will confuse litigants and judges, while endorsing cy pres settlements that in no way benefit class members. I therefore respectfully dissent from our unfortunate failure to rehear this case en banc.
I.
We require district judges to be reasonably certain that class members will benefit before approving a cy pres settlement. Six (6) Mexican Workers, 904 F.2d at 1308. We have counseled that the “choice of charity and its relation to the class members and class claims — or lack thereof — -figurefs] heavily in our analysis.” Dennis, 697 F.3d at 865 (emphasis added). Thus, we have rejected settlements where the selected charity lacks “a substantial record of service” in remedying the types of wrongs alleged, or where the selected charity is not sufficiently “limited in its choice of projects” to ensure that class members will truly be benefitted by its works. Id. (quoting Six (6) Mexican Workers, 904 F.2d at 1308). The majority, however, failed to apply these safeguards.
First, the selected cy pres beneficiary, the Digital Trust Foundation (DTF), has no record of service. Lane v. Facebook, Inc., 696 F.3d 811, 817 (9th Cir.2012). The “charity” is simply a bespoke creation of this settlement. The majority is apparently untroubled by this. It attempts to distinguish our case law emphasizing the importance of a charity’s record of service by noting that in those cases “there was no way of knowing whether the organization would use the funds to the benefit of class members,” while here “the settlement agreement and DTF’s Articles of Incorporation tell us exactly how funds will be used.” Lane, 696 F.3d at 822. Respectfully, they do no such thing.
The DTF has made a written commitment to “fund and sponsor programs designed to educate users, regulators[,] and enterprises regarding critical issues relating to protection of identity and personal information online through user control, and the protection of users from online threats.” Id. However one might describe this mission statement, “limited” is not the word that comes to mind. See, *794 e.g., Dennis, 697 F.3d at 865. DTF promises to fund and sponsor “programs” that address “critical issues” relating to Internet privacy. But neither the “programs” nor the “issues” are defined with any specificity, and certainly not the specificity necessary to be reasonably certain that class members will actually benefit from these activities.
Frequent NPR listeners know that the MacArthur Foundation’s open-ended mission statement indicates that it is “committed to building a more just, verdant, and peaceful world.” MacArthur Foundation, http://www.macfound.org/about (last visited February 18, 2013). But that is no guarantee that a donation to the MacArthur Foundation will actually result in, or advance, justice, verdancy, or peace. Rather, a potential donor must look to other factors, such as the MacArthur Foundation’s past record of service or its specific list of projects, to determine whether it is reasonably certain that a donation will truly bring about the promised effects. That the DTF is committed to funding “programs” regarding “critical issues” says absolutely nothing about whether class members will truly benefit from this settlement; it simply promises that DTF will do some “stuff’ regarding some more “critical stuff.” If fashioning an open-ended, one-sentence mission statement is all it takes to earn cy pres settlement approval in our court, we have completely eviscerated the meaning of our previously controlling case law.
II.
The majority also undercuts our precedent requiring cy pres money to be spent in a maimer that advances the “objectives of the underlying statutes.” Nachshin, 663 F.3d at 1036. But DTF’s receipt of these settlement funds, even if unobjectionable in all other respects, simply does not advance the objectives of the statutes upon which plaintiffs relied in their suit.
Here, the plaintiffs brought claims under the Electronic Communications Privacy Act, 18 U.S.C. § 2510; the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; the Video Privacy Protection Act, 18 U.S.C. § 2710; the California Consumer Legal Remedies Act, Cal. Civ.Code § 1750; and the California Computer Crime Law, CahPenal Code § 502. With the exception of the California Consumer Legal Remedies Act, these statutes all share a common purpose — preventing the unauthorized access or disclosure of private information. Yet the DTF’s sole stated purpose is to “educate users, regulators[,] and enterprises” on how to protect Internet privacy “through user control.” Lane, 696 F.3d at 822 (emphasis added). Plaintiffs’ claims, however, have nothing to do with users’ lack of “education” or “control.” Instead, they relate to misconduct by Internet companies that wrongfully exposes private information in ways that even educated users cannot anticipate, prevent, or direct.
Our precedent holds that it is not enough simply to identify any link between the class claims and a cy pres distribution, such as whether both concern food (Dennis ) or the Internet (Lane). Instead, an appropriate cy pres recipient must be dedicated to protecting consumers from the precise wrongful conduct about which plaintiffs complain. See Dennis, 697 F.3d at 867. But an organization that focuses on protecting privacy solely through “user control” can never prevent unauthorized access or disclosure of private information where the alleged wrongdoer already has unfettered access to a user’s records. The DTF can teach Facebook users how to create strong passwords, tinker with their privacy settings, and generally be more cautious online, but it can’t teach users *795 how to protect themselves from Face-book’s deliberate misconduct. Unless of course the DTF teaches Facebook users not to use Facebook. That seems unlikely.
I regret the muddle this case makes of our cy pres jurisprudence, and I respectfully dissent from our failure to rehear this case en banc.

. See, e.g., Martin H. Redish et al., Cy Pres Relief and the Pathologies of the Modem Class Action: A Normative and Empirical Analysis, 62 Fla. L.Rev. 617, 620 (2010) (discussing the “dramatic turn in modern class actions toward the use of cy pres relief”).