OPINION
GOULD, Circuit Judge:
This case asks us to decide whether a settlement agreement reached before class certification between Plaintiffs and Defen *921 dants is fair, reasonable, and adequate. We agree with the district court that the settlement merits approval, and we affirm.
I
Coverall North America, Inc. (“Coverall”) is a janitorial franchising company operating in California. Plaintiffs brought a class action suit against Coverall in 2009 alleging that (1) Coverall misclassified its California franchisees as independent contractors, thereby avoiding the protections afforded by California’s labor laws to franchisees; and (2) Coverall breached its franchise agreements, and committed fraudulent and unfair practices, by removing customer accounts from franchisees without cause so that it could resell those accounts to other franchisees. In August 2011, after about two years of significant litigation, the parties agreed on a settlement. The sole objector, Amrit Singh, filed an objection to the proposed settlement on November 14, 2011, and although the objection was not timely, the district court accepted the filing “in the interest of determining the issues on the merits.” After a fairness hearing on November 21, 2011, the district court approved the settlement agreement on February 23, 2012 pursuant to Federal Rule of Civil Procedure 23(e).
The settlement agreement is expansive, but the most contested provisions include the following: (1) Coverall pledges to assign customer accounts to current franchisees, with the assignments remaining conditional until franchisees have paid their franchise fees in full; (2) former franchise owners will receive $475 each and will receive a $750 purchase credit toward a new Coverall franchise; and (3) new franchisees will have a 30-day right to rescind their franchise agreements, and upon rescission will receive all the of money they have paid during that period under the franchise agreement except for the $75 background investigation fee. The settlement agreement also outlines other changes to the franchise agreements and Coverall’s operating procedures. Beyond the agreement generally, Singh contests the award of $994,800 in attorneys’ fees to Plaintiffs’ attorneys. As of the fairness hearing on November 21, 2011, two class members had opted out of the agreement and Singh is the only objector.
II
We review the district court’s approval of a proposed class action settlement agreement for abuse of discretion. Rodriguez v. W. Publ’g Corp., 563 F.3d 948, 963 (9th Cir.2009); see also United States v. Hinkson, 585 F.3d 1247, 1250 (9th Cir.2009) (en banc) (giving general abuse of discretion standard in contexts beyond class actions). Our review of a class action settlement is “extremely limited,” In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir.2000), and we will only reverse upon “a strong showing that the district court’s decision was a clear abuse of discretion,” Staton v. Boeing Co., 327 F.3d 938, 960 (9th Cir.2003) (quotation marks and citations omitted). We also review for abuse of discretion the calculation and award of attorneys’ fees. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 940 (9th Cir.2011).
III
When a class action settlement agreement is submitted for approval, “[t]he initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge.” Officers for Justice v. Civil Serv. Comm’n, 688 F.2d 615, 625 (9th Cir.1982). The district court judge must determine whether the settlement is “fundamentally fair, adequate and reasonable.” Id.
*922 We start with fees. Although the parties have agreed on the award of attorneys’ fees, the district court has an “independent obligation to ensure that the award, like the settlement itself, is reasonable.” Bluetooth, 654 F.3d at 941. However, we recognize that in the settlement context fees are a subject of compromise. Staton, 327 F.3d at 966. We have made clear that “since the proper amount of fees is often open to dispute and the parties are compromising precisely to avoid litigation, the [district] court need not inquire into the reasonableness of the fees at even the high end with precisely the same level of scrutiny as when the fee amount is litigated.” Id.
We note at the outset that two different methods may be used “for calculating a reasonable attorneys’ fee depending on the circumstances.” Bluetooth, 654 F.3d at 941. The lodestar method is most appropriate where the relief sought is “primarily injunctive in nature,” and a fee-shifting statute authorizes “the award of fees to ensure compensation for counsel undertaking socially beneficial litigation.” Id.; see also Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir.1998). That is precisely the situation we face here, because the settlement provisions that Plaintiffs have sought and agreed upon are mostly injunctive in nature and a fee shifting statute exists, California Business and Professions Code § 17082. We conclude that the district court correctly used the lodestar method in gauging the fairness of the attorneys’ fee award.
The district court also correctly calculated the lodestar amount and reasonably concluded that the agreed upon award, $994,800, was appropriate. In its analysis, the district court noted that the case had been contentiously litigated for over two years, and that the report submitted by Plaintiffs’ counsel showing that over 4,500 hours had been billed by six attorneys, a paralegal, and a law clerk was fair and accurate. Using that number, the district court calculated that the lodestar amount reached almost $3 million. At a third of the lodestar amount, the district court soundly concluded that the attorneys’ fee award of $994,800 was reasonable.
Moreover, the district court prudently cross-checked the award amount against the alternative percentage-of-recovery method. We have “encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method.” Bluetooth, 654 F.3d at 944-45. Generally, courts use a benchmark figure of 25% to gauge the reasonableness of an award under the percentage-of-recovery method, which is most appropriate in common fund settlement cases. Id. at 942; In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988, 992 (9th Cir.2010); Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir.1990). Here, the district court correctly noted that the value of the settlement, and particularly its injunctive terms, was disputed. While Singh’s figure of $56,525 is clearly incorrect because it gives no value to the injunctive terms of the settlement, Plaintiffs may certainly be overstating the value of the settlement at $20 million. The district court reasonably surmised that even if the value of the settlement was $4 million' — only a part of the amount claimed by Plaintiffs — the attorneys’ fee award would still be within the normal bounds of reasonableness. The district court was within its discretion to find the attorneys’ fee award to be fair, reasonable, and adequate because it was both significantly below the lodestar amount and represented an unobjectiona *923 ble percentage of recovery once the value of injunctive relief was considered.
Singh’s main argument against the reasonableness of the attorneys’ fee award is that the actual value of the settlement, which he characterizes as primarily the amount of the cash payments, is so low that the award is unreasonable. Singh correctly notes that “the benefit obtained for the class” is important in determining whether to adjust the lodestar amount and by how much, Hanlon, 150 F.3d at 1029, but any such adjustment is equitable and squarely at the discretion of the district court, Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and Singh presents no evidence that the district court abused its discretion in declining further adjustment from the lodestar amount. Moreover, the district court acted within its proper discretion when it found that the settlement contains significant benefits for Plaintiffs beyond the cash recovery, and thus that the award, at about a third of the lodestar amount, was reasonable.
IV
Turning to the settlement as a whole, Federal Rule of Civil Procedure 23(e) “requires the district court to determine whether a proposed settlement is fundamentally fair.” Hanlon, 150 F.3d at 1026. As a general rule, a district court must consider the following factors when examining the fairness of a proposed settlement:
(1) the strength of the plaintiffs’ case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir.2004); Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir.1993). In its analysis under the Churchill factors, the district court noted that the risks of moving forward with litigation were significant, both in terms of the likelihood of success and cost. Plaintiffs expressed justified concern that the class members could be forced into individual arbitration after the Supreme Court’s decision in AT & T Mobility LLC v. Concepcion, [— U.S. -,] 131 S.Ct. 1740 [179 L.Ed.2d 742] (2011), and conflicting case law supports those concerns.
The district court also agreed with Plaintiffs that California employment law would likely make obtaining class certification particularly difficult. Following the Supreme Court’s decision in Wal-Mart Stores, Inc. v. Dukes, — U.S. -, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), there was a real prospect that California’s multi-factor test for employee classification would have proven fatal to any eventual class certification in this case. As an additional risk, the district court found that the poor financial health of Coverall seriously increased the chance that Plaintiffs would be left with nothing if they continued to litigate their claims. Rounding out its analysis, the district court noted that no governmental entity had weighed in on the matter, that Plaintiffs’ attorneys had significant experience and had demonstrated skill and diligence throughout the litigation, and that only two class members had opted out of the agreement.
Further, the district court reasonably found that the settlement would yield significant benefits for Plaintiffs given the risks and costs of continuing litigation. *924 The district court found that, beyond the cash for former franchisees, “assignment of customer accounts and pledges for programmatic changes are significant victories.” The district court elaborated that “once franchises are assigned, franchisees will own a valuable business they can choose to sell or continue to operate.” Viewed together, the district court determined that the Churchill factors supported the conclusion that the settlement was fair, reasonable, and adequate.
Singh claims that the district court was “under a special obligation to make clear, fact-based findings regarding the value of the non-monetary terms of the settlement,” by which he seems to contend that the district court should have assigned a monetary value to the non-monetary terms of the settlement. But we have never required a district court to assign a monetary value to purely injunctive relief. To the contrary, we have stated that courts cannot “judge with confidence the value of the terms of a settlement agreement, especially one in which, as here, the settlement provides for injunctive relief.” Staton, 327 F.3d at 959. Monetary valuation of injunc-tive relief is difficult and imprecise.[1] As such, we “put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested.” Rodriguez, 563 F.3d at 965 (internal citations omitted). The district court has no obligation to make explicit monetary valuations of in-junctive remedies, and it did not abuse its discretion in applying the Churchill factors to this case.
Singh also argues that the district court abused its discretion in not exercising heightened review given the alleged presence of “warning signs” indicating collusion. Although we must be particularly vigilant in the pre-class certification context, when there are typically more opportunities for attorney collusion, Hanlon, 150 F.3d at 1026, we will rarely overturn an approval of a compromised settlement “unless the terms of the agreement contain convincing indications that the incentives favoring pursuit of self-interest rather than the class’s interests in fact influenced the outcome of the negotiations and that the district court was wrong in concluding otherwise,” Staton, 327 F.3d at 960.
In Bluetooth, we outlined three settlement arrangements that could indicate collusion because they may improperly favor counsel at the expense of the plaintiffs. 654 F.3d at 946-47. These are:
*925 (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a “clear sailing” arrangement providing for the payment of attorneys’ fees separate and apart from class funds ...; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.
Id. at 947 (internal quotation marks and citations omitted). Although the district court did not explicitly outline these “warning signs,” contrary to Singh’s assertion, it did specifically address two of the three. The district court found the third sign, the presence of a reversion clause, to “not [be] a preferable result,” but balanced it with the overall benefits of the settlement to Plaintiffs and the fact that the cash payment represented a small amount of those benefits.
The district court’s analysis, balancing the reversion clause against the overall strength of the settlement, was adequate. The first warning sign was not present because the district court correctly concluded that the attorneys’ fee award was entirely reasonable. This conclusion has broad implications for the district court’s obligation to ensure “that the settlement is not the product of collusion among the negotiating parties.” Id. (internal quotation marks, citation, and alteration omitted). Because collusion is the product of attorneys pursuing their self-interest to the detriment of the class’s interests, one would expect primarily to find collusion where attorneys disproportionately bene-fitted from the settlement. Id. at 947-48; see Staton, 327 F.3d at 964 (“If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions [of the settlement].”). A settlement may still be the product of collusion when attorneys’ fees are reasonable. But when, as in this case, the fee award is clearly reasonable as viewed through the appropriate application of either the lodestar or percentage-of-recovery methods, the chance of collusion narrows to a slim possibility. In these cases, it is sufficient that a district court recognizes and balances potentially collusive provisions, such as the reversion to defendants of unclaimed funds, against the other terms of the settlement agreement. See Bluetooth, 654 F.3d at 948 (“But these factors did not obviate the need to examine the fee provision in light of the rest of the agreement.”); Staton, 327 F.3d at 961 (“[I]t will be rare that we will reverse a district court’s approval ... unless the fees and relief provisions clearly suggest the possibility that class interests gave way to self-interest.”); Hanlon, 150 F.3d at 1026 (“[I]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.”).
Plaintiffs faced real dangers in proceeding on their case in light of menacing precedents from the United States Supreme Court. At the same time, the class gained significant benefits from the settlement, and Plaintiffs’ lawyers received fees that are overall reasonable. The district court correctly examined the settlement agreement and did not abuse its discretion in finding the agreement to be fair, reasonable, and adequate.
V
The district court’s decision to grant discovery is reviewed for abuse of discretion. Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir.2002). As a threshold matter, Singh has standing to appeal the settlement’s deposition requirement because the district court ordered that objectors comply with the relevant settlement *926 provision, and he was later required to sit for a deposition as the sole objector.
The district court also did not abuse its discretion in approving the settlement term that objectors be available for depositions. Federal Rule of Civil Procedure 30(a)(1) allows a party to conduct depositions, and courts commonly require objectors to make themselves available for deposition given the power held by objectors. See, e.g., In re Netflix Privacy Litig., 2013 WL 6173772 (N.D.Cal.2013) (finding that objectors “have voluntarily inserted themselves into this action, and as such, depositions ... are relevant and proper”); In re TFT-LCD (Flat Panel) Antitrust Litig., 289 F.R.D. 548 (N.D.Cal.2013) (holding objectors in contempt for refusing to be deposed); In re Cathode Ray Tube (CRT) Antitrust Litig., 281 F.R.D. 531, 533 (N.D.Cal.2012). The district court considered the totality of the circumstances when it concluded that a deposition of Singh was appropriate, including the deposition’s utility to the court and the scant possibility that Singh would be harassed or intimidated by giving a deposition, and the district court was well within its discretion in so concluding.
VI
Finally, the district court did not abuse its discretion when it approved the settlement agreement consistent with the Class Action Fairness Act (“CAFA”) notice requirement described in 28 U.S.C. § 1715(b) and (d). CAFA requires that defendants in a class action suit send notice to all relevant state and federal authorities where class members reside. 28 U.S.C. § 1715(b). A court may not issue an order giving final approval of a proposed settlement until 90 days have passed since the relevant authorities were served with notice. 28 U.S.C. § 1715(d). When violations of the 28 U.S.C. § 1715(b) notice requirement occur, “[a] class member may refuse to comply with and may choose not to be bound by a settlement agreement or consent decree.” 28 U.S.C. § 1715(e)(1). Rather than asking to be exempt from the settlement agreement, Singh demands relief beyond the scope of 28 U.S.C. § 1715 — the rejection of the entire settlement agreement. Because Singh requests no relief tied to § 1715, he cannot show that a “favorable decision will provide redress,” and thus he lacks standing on this claim. See Knisley v. Network Assocs., Inc., 312 F.3d 1123, 1126 (9th Cir.2002). And even if Singh had standing to pursue this claim, it is without merit because the class was clearly limited to “individuals in the State of California,” and Coverall properly notified the Attorney General of California.
VII
The district court did not abuse its discretion in finding the settlement agreement and its attorneys’ fee award to be fair, reasonable, and adequate. The district court also appropriately exercised its discretion in ordering that Singh be available for a deposition.[2]
AFFIRMED.

. The dissent contends that our precedents contradict this statement. The dissent relies on Dennis v. Kellogg Co., 697 F.3d 858 (9th Cir.2012), and Staton, 327 F.3d at 973, referring to Hanlon, 150 F.3d at 1029. See Dissent 931-32. Neither of those cases is controlling. In Dennis, we held that a district court must give a valuation where the bulk of the settlement was a charity cy pres award of "$5.5 million worth of food” without reference to whether the food was to be valued at cost, wholesale, or retail value. 679 F.3d at 867 (internal quotation marks omitted). In that case, the settlement term was not injunc-tive, could not be determined without a valuation, and the information would readily be available to the defendant. Similarly, in Sta-ton, we noted that valuation for injunctive relief may be considered when there is a "clearly measurable benefit,” and referred to the cost of a replacement latch for minivans at issue in Hanlon. 327 F.3d at 973. But in Hanlon, "the district court used its valuation of the fund only as a cross-check of the lodestar amount” because the valuation of the injunctive relief was still too uncertain. Staton, 327 F.3d at 973. We have not required a district court to assign a monetary value to injunctive relief as amorphous as the right to own a franchise with its attendant rights and responsibilities. See Dennis, 697 F.3d at 864 (requiring that the district court "explored comprehensively all factors” and "give a reasoned response to all non-frivolous objections” (internal quotation marks and citation omitted)).

. Although we do not agree with the thoughtful comments of our dissenting colleague, class action settlement approval is important, and bench and bar benefit from the expression of more than one view. We diverge from the dissent on the level of deference to be given to the district court overseeing the adversarial process, and our disagreements largely follow from that. Neither our precedent nor that of the Supreme Court requires the approach taken in dissent. The dissent urges positions that our precedent to date has not required, such as the assignment of a particular monetary value to injunctive relief. This case was hard fought by skilled lawyers for years, the injunctive terms of the settle *927 ment are in our view not illusory because they have practical value, and Plaintiffs’ class action theory was under serious threat by developing Supreme Court precedents. The district court was well positioned to follow the case’s progress. The development of the parties’ settlement was aided by a retired federal judge acting as mediator. We review the district court’s approval of the settlement for abuse of discretion, and here the district court did not proceed illogically, improbably or without support from inferences drawn from facts in the record. Hinkson, 585 F.3d at 1251. All things considered, we view the settlement as reasonable and within the range that we should approve.